UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:

AT LAW AND IN ADMIRALTY

SAMIR GHARFEH,

      Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE and
CATALINA CARVAJAL, M.D.

      Defendants.

_____/

## COMPLAINT FOR DAMAGES

      The Plaintiff, SAMIR GHARFEH, hereby sues the Defendants and files this Complaint for Damages and says:

### THE PARTIES AND JURISDICTION

      1.      This is an action for damages that exceed $75,000 exclusive of interest, costs, and attorney's fees.

      2.      **THE PLAINTIFF.**  The Plaintiff, SAMIR GHARFEH, is sui juris and is a resident of Katy, Texas.  At all times material hereto, the Plaintiff was a passenger onboard the cruise ship operated by the Defendant Carnival Corporation.  At all times material hereto, the Plaintiff received medical care from the physicians and medical staff onboard the cruise ship operated by the Defendant Carnival Corporation and the Defendant Carvajal was a physician onboard who was providing medical care and treatment to the Plaintiff.

3.    **THE DEFENDANTS**.

a.   **CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE**:   The Defendant, Carnival Corporation d/b/a Carnival Cruise line (hereinafter referred to as Carnival or Defendant or the cruise line), is incorporated outside of the state of Florida but does business in the State of Florida and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred, offered medical services onboard the cruise ship on which the negligence occurred, provided a facility onboard its ships including the subject ship for providing medical care to its passengers including the Plaintiff herein, selected and hired the physicians and medical staff onboard its cruise ships, regularly advised the physicians and medical staff onboard its cruise ships about the policies and procedures of the ship and of the ship's medical facility, supervised and controlled the actions and conduct of the physicians and medical staff onboard its cruise ships, held out the physicians and medical staff onboard its cruise ships as its own agents or employees, entered into a joint venture with the physicians onboard its ships to provide medical care to the cruise passengers, and was the employer and/or principal to its agents the physician and medical staff who provided medical care and treatment to the Plaintiff, a cruise passenger onboard a Carnival cruise ship.

b.   **CATALINA CARVAJAL**: The Defendant, Catalina Carvajal, is a physician licensed outside the state of Florida but who was an employee, agent, and/or joint venture of Defendant Carnival which does business in the State of Florida and which at all times material hereto was doing business in Miami Dade County, Florida.  At all times material hereto, the Defendant Carvajal worked as one of the shipboard physicians on the cruise ship owned and/or

operated by the Defendant Carnival on which the subject negligence occurred and provided negligent medical care to the Plaintiff which caused permanent injury to the plaintiff.

4.      **FEDERAL SUBJECT MATTER JURISDICTION**.  Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.      **VENUE AND PERSONAL JURISDICTION**.  The Defendants, at all times material hereto, through agents or representatives, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.      **DATE OF THE INCIDENTS**.  The incidents occurred on and after February 12, 2016.

8.    **LOCATION OF THE INCIDENT.**   These incidents occurred onboard the vessel Carnival *Freedom*, a ship in navigable water while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by the general maritime law.

9.    **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.**
At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

10.    **DUTIES OWED.**    The Defendant cruise line owed a duty to provide medical care and treatment to its passengers which was proper and reasonable under the circumstances and within the standard of care. These duties arise in this case from the law and from the fact and circumstances of this cruise which include but are not limited to the following: (a) the Defendant cruise line owes a duty under the General Maritime Law to provide its passengers with a voyage and a ship which are reasonably safe under the circumstances; (b) the Defendant cruise line represents in its advertising and literature that the cruise line provides a Medical Center staffed with medical professionals; (c) the Defendant cruise line holds out the ship's physicians as its apparent agent; (d) the Defendant cruise line voluntary undertook in this case to provide medical care and treatment to the Plaintiff; (e) the cruise ship is isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (g) the cruise line and this ship caters to U.S. citizens who are used to and expect first world medical care; (h) the cruise line markets this cruise as safe and secure for its passengers; (i) the cruise line profits off of providing onboard medical care to its passengers; (j) the subject doctor represented herself as working for and as an agent of the Defendant; and (k) the subject cruise ship takes its passengers to the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

11.     The Defendant Carnival is vicariously liable for the negligence of its shipboard medical personnel including those persons who were employees, apparent agents, actual agents, and/or joint venturers of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).  Carnival owned, operated, controlled, and/or maintained the medical facility, called the "Medical Center", aboard the Carnival *Freedom*, and was responsible for its maintenance and thus exercised control over the provision of health care to its passengers.  A fuller description of this control is provided in the paragraphs below.

12.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**." *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D.Fla. 1991). The cruise line is **directly negligent for negligently hiring, training, and retaining** the doctor onboard and the medical staff. Further, the cruise line is negligent due to the **negligent misrepresentation** of its shipboard physicians that the ship's onboard Health Center was capable of handling the Plaintiff's severe medical condition. Further, the cruise line is responsible for the negligent acts of its **apparent agents**, the physicians and medical staff onboard its ship. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014); *Suter v. Carnival Corporation*, 2008 WL 4662144 (S.D.Fla. 2007); *Huntley v. Carnival Corporation*, 307 F.Supp. 2d 1372 (S.D.Fla. 2004); *Fairley v. Royal Caribbean Cruise Line, Ltd.*, 1993 A.M.C. 1633 (S.D.Fla. 1993); and *Doonan v. Carnival Corporation*, 404 F.Supp. 2d 1367, 1371-72 n.2 (S.D.Fla. 2005). Further, the cruise line here **voluntarily assumed or voluntarily undertook to provide medical care** to its passenger, and thus created a duty to provide such care reasonably. *See, e.g., Horton v. Freeman*, 943 So.2d 1016 (Fla. 4th DCA 2006); *Estate of Sharp v. Omnicare, Inc.* 879

So.2d 34 (Fla. 5th DCA 2004); and *Roos v. Morrison*, 913 So.2d 59 (Fla. 1st DCA 2005); *Kerfoot v. Waychof*, 501 So.2d 588 (Fla. 1987).

13.     **CARNIVAL'S REPRESENTATIONS**.   Carnival is in the business of providing medical services to its passengers. Carnival also benefits from providing such services. Carnival represents in its marketing materials to prospective passengers in order for them to rely on these representations that each ship contains an onboard Medical Center which is staffed by doctors and nurses. The fact that Carnival has a Medical Center onboard its ships and represents to the public that the medical staff is on call 24 hours a day for emergencies attracts prospective passengers to purchase tickets for Carnival cruises even though those cruises travel to foreign countries, which are often third world countries.  Carnival also represents that it has a ship's physicians that meet or exceed the credentialing guidelines established by the cruise ship medicine section of the American College of Emergency Physicians who are experienced with general medicine or general practice including emergency or critical care, and have one to three years clinical experience and minor surgical skills.

14.     Carnival also makes representations in its literature, online, and in its onboard video about the ease of travel for its primarily U.S. citizen passengers. Thus, even though the Carnival ships travel throughout the Caribbean and in and near ports which are in third world countries, Carnival represents that its medical centers are staffed by qualified physicians and nurses who are committed to providing the highest quality of shipboard medical care in order to maintain a safe and comfortable environment for its guests.

15.     **JOINT VENTURE**.   The cruise line and the physicians and medical personnel aboard the Defendant's ships engaged in a joint venture to provide medical services to the cruise passengers.  It was the joint intention and common purpose of the Defendant cruise line and the

shipboard physicians and medical personnel onboard to provide healthcare to the thousands of passengers who come aboard the Defendant's ships to enjoy the cruise experience with the peace of mind that their medical and emergency healthcare needs are satisfied.  The Defendant cruise line controls the actions and conduct of the shipboard physician and medical staff.  The physicians and medical staff are treated as crewmembers of the ship; they are under the command of the ships officers including the captain of the ship.  The medical personnel onboard the ship are required by the cruise line to wear certain uniforms which resemble ship officer uniforms. The cruise line retains sole control over the medical facility itself by dictating the hours of operation, the supplies, equipment, and medicines with which the facility is stocked, and the policies and procedures for operation and maintenance of the facility and for providing medical services.  The cruise line controls the shipboard physicians and medical staff by requiring them to provide 24 hour on call emergency medical care to the Defendant's passengers.  The cruise line also controls the price and sale of medical services, supplies, and medication sold at the shipboard medical center. The cruise line controls the medical decisions regarding the criteria for and the circumstances under which passengers are disembarked for further medical care off the ship.  The cruise line controls the medical decisions regarding the criteria for and the circumstances under which the ship's route is altered or diverted in order to evacuate the passengers for medical care off of the ship including taking the ship and the passenger to an alternative port or utilizing boats or aircraft to evacuate passengers in need of medical care. The cruise line also provides a land based U.S. physicians for onboard medical staff to consult about medical decisions. The cruise line dictates the amount charged for medical services, supplies, and medications for onboard services.  The cruise line also requires that all charges be placed on and paid through the onboard charge account of the passenger.

16.     The cruise line and the shipboard physicians and medical staff share a joint proprietary interest by billing passengers who receive medical services rendered by the medical staff with a unified billing system through the cruise line.  The cruise line and the physicians and medical staff therefore relied on a single billing system and unified strategy of advertisement on Carnival's website.

17.     The cruise line and shipboard physicians and medical staff share profits and losses and split revenue from medical services and supplies rendered to the thousands of cruise passengers.  The shipboard physicians and medical staff increase profits by servicing passengers and prescribing them medications and supplies. Carnival's compensation for the shipboard physicians and medical staff's services is dependent in part on the medical center's revenues and the medical center's revenues depend in part on the recommendations and prescriptions of the physicians to the passengers as to the medical care that they need or should have and whether these passengers should evacuate the ship to receive medical care off of the ship.

18.     **APPARENT AGENCY/AGENCY BY ESTOPPEL**.   Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line.  The Defendant through its actions and conduct represents to its cruise passengers including, but not limited to the Plaintiff herein, that the shipboard physicians and medical staff work for the benefit of the Defendant.  These actions and conduct of the cruise line include but are not limited to the following:

a.   The Defendant controls cruise line physicians attire, which includes, at times, a uniform with epaulettes and stripes similar to other crewmembers;

b.   The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private

furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

c.   The Defendant cruise line requires that the ship's physicians sail with the ship;

d.   The Defendant cruise line provides the onboard Medical Center;

e.   The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

f.   The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

g.   The ship's physicians represented themselves to passengers that they are employees of Carnival Cruise Line;

h.   The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

i.   The Defendant publishes the Medical Center's daily office hours in its "Fun Times" flyer distributed to all passengers aboard its ships; and

j.   The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies.

19.      **ACTUAL   AGENCY/RESPONDEAT   SUPERIOR**.      Defendant   Catalina

Carvajal was an employee and actual agent of Carnival on the date of the subject incident.  This is

an action based on the agency relationship between Carnival and the shipboard physicians and

medical staff in which the physicians and medical staff acted and act as the actual agents of

Carnival in providing medical services, medical supplies and medications to Carnival's passengers

on a regular basis.  Carnival was negligent by and through the acts of its employees or agents.

Carnival employed the shipboard physicians, including Dr. Carvajal, and the medical staff aboard

the subject ship to provide medical and emergency medical treatment to its crew and thousands of

passengers aboard its ships.  The Defendant, as owner of the ship and its medical center, is liable

to its passengers for medical negligence of its medical employees.  Carnival represented to

Carnival's passengers that the shipboard physicians and medical staff would provide Carnival

passengers a safe and comfortable environment for cruise passengers and that the medical center

would meet or exceed the standards established by the Cruise Lines International Association

(CLIA) and the American College of Emergency Physicians (ACEP).  The shipboard physicians

and medical staff consented and accepted this relationship and in exchange provided payment, and

benefits including senior officer status, round-trip transportation from residence to ship, uniforms,

meals, private furnished cabins with refrigerators, telephones, computers with internet access, and

daily housekeeping services.  Carnival maintained and exercised control over the shipboard

physicians and medical staff's actions and conduct aboard the ship and the shipboard medical

center.  This is evidenced by the fact that Carnival maintained an ongoing relationship with the

shipboard medical physicians and medical staff whereby Carnival exclusively provided its

passengers for medical services, controlled the stocking of the medical center, offered Carnival's

Cruise Vacation Protection Plan for reimbursement of medical related expenses, controlled the

medical center's hours of operation, allowed and required the ship's physicians to operate and

provide services out of the ship's Medical Center, required the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies, and controlled termination of the employment relationship between the shipboard physicians and medical staff with Carnival.

20.    **VOLUNTARY UNDERTAKING**.  Carnival voluntarily undertook to provide medical care to the Plaintiff onboard the ship.  In so doing, Carnival undertook to provide care which was reasonable and within the standard of care.  Carnival failed to provide reasonable care to its cruise passenger, the plaintiff herein.  Carnival misdiagnosed the condition of the passenger, treated the passenger with the wrong medications, failed to heed the advice of a physician who advised the shipboard physicians and medical staff of the correct diagnosis and treatment, failed to evacuate the passenger on a timely basis given the condition of the passenger, and failed to arrange for emergent transportation to the appropriate medical facility once the ship did port.

21.    **THE CRUISE LINE'S NEGLIGENCE IS BOTH VICARIOUS AND DIRECT.**    The negligence of the Defendant cruise line is vicarious in that a cruise line is vicariously liable for the medical negligence of its onboard medical staff under the doctrine of respondeat superior. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The Defendant cruise line mandates that passengers seeking onboard medical treatment do so with the onboard medical staff operating out of the ship's Medical Center.  The Defendant cruise line owns, manages, maintains, supplies, and staffs the shipboard medical center which provides emergency medical care for passengers and its crew.   This arrangement necessitates that the onboard medical staff, as the exclusive healthcare providers on the ship, act on behalf of the Defendant cruise line in providing medical services to passengers. The shipboard physicians, which include Dr. Catalina Carvajal, accepted this undertaking by performing medical services for the Plaintiff. The Defendant cruise line controls the actions and conduct of the shipboard

physicians and medical staff. The physicians and medical staff are treated as crewmembers of the ship; they are under the command of the ships officers including the captain of the ship.  The medical personnel onboard the ship are required by the cruise line to wear certain uniforms which resemble ship officer uniforms. The cruise line retains sole control over the medical facility itself by dictating the hours of operation, the supplies, equipment, and medicines with which the facility is stocked, and the policies and procedures for operation and maintenance of the facility and for providing medical services.  The cruise line controls the shipboard physicians and medical staff by requiring them to provide 24 hour on call emergency medical care to the Defendant's passengers.  The cruise line also controls the price and sale of medical services, supplies, and medication sold at the shipboard medical center. The cruise line controls the medical decisions regarding the criteria for and the circumstances under which passengers are disembarked for further medical care off of the ship.  The cruise line controls the medical decisions regarding the criteria for and the circumstances under which the ship's route is altered or diverted in order to evacuate the passengers for medical care off of the ship including taking the ship and the passenger to an alternative port or utilizing boats or aircraft to evacuate passengers in need of medical care. The cruise line also provides a land based U.S. physicians for onboard medical staff to consult about medical decisions. The cruise line dictates the amount charged for medical services, supplies, and medications for onboard services.  The cruise line also requires that all charges be placed on and paid through the onboard charge account of the passenger.   The negligence of the cruise line is direct for holding out as its apparent agent the medical staff including the onboard doctor; for negligently hiring, retaining, training, and equipping the physicians and other medical staff onboard; for voluntarily undertaking the medical care of the Plaintiff herein; for negligently equipping and provisioning the Medical Center onboard; and for failing to recommend, urge, or

require the Plaintiff to disembark, and for failing to transport the Plaintiff from the ship to a nearby hospital.

22.     The negligence of Carnival's onboard medical staff in misdiagnosis and mistreatment of Plaintiff while the ship was further exacerbated by subsequent misdiagnoses and failures to transport Plaintiff off of the ship.

23.     Carnival's direct negligence is also in its own policies and procedures and violating its own policies and procedures for failing to divert the ship, speed up the ship, arrange for medical evacuation, and call in consults from medical specialists whether they are on ship or on land.

24.     **DUTIES OWED BY DEFENDANT CARVAJAL.**  Defendant Carvajal owed a duty to provide medical care which was within the reasonable standard of care and which was reasonable under the circumstances.  At all times material hereto, Defendant Carvajal held herself out to the passengers onboard the subject ship, including the Plaintiff, as a healthcare provider capable of and who undertook the corresponding duty to the Plaintiff of providing medical services in accordance with that level of care and skill that is recognized as acceptable and appropriate by reasonably prudent similar health service providers under the same or similar circumstances.

25.     **DESCRIPTION OF INCIDENT.**    Relying on the representations of the cruise line about the medical and other facilities and amenities on the cruise ship, Samir Gharfeh took a cruise with his family on February 8, 2016 on the *Carnival Freedom.*

26.     During that cruise, Mr. Gharfeh experienced lower abdominal pain.  He was complaining of mild pain consistent with his past flares of diverticulitis.  His son, Dr. Majed Gharfeh a licensed physician in the United States and an internist, was aboard and was familiar with his father's condition.  Majed Gharfeh contacted the medical center desk and asked them if they had oral antibiotics Ciprofloxacin and Metronidazole on board. The cruise ship medical staff

advised Dr. Gharfeh that they did have them onboard and quoted him the price for a 2 day supply. When Dr. Gharfeh went to the infirmary to pick up the antibiotics, the staff on call refused to provide him the antibiotics without a prior written prescription. Dr. Gharfeh, who is a licensed physician in the United States offered to prepare a prescription himself. He was denied. Dr. Gharfeh asked to speak with the on-call doctor but was advised the doctor would not be available until 3:00 p.m. Dr. Gharfeh advised the staff that he was concerned about the delay of appropriate treatment. Dr. Gharfeh specifically advised the cruise ship medical staff at that time that his father's condition was diverticulitis and that that condition required immediate medical treatment with antibiotics and that the failure to immediately treat with antibiotics could result in significant and permanent problems or death. Diverticulitis is a condition when small pouches or sacs form and push outward through weak spots in the wall of the colon. Perforated diverticulitis is when a small tear or hole develops in a pouch or sac of the colon. Pus and the contents of the bowel which is full of bacteria can then leak through the hole or tear into the gut or peritoneum. This is known as Peritonitis which requires immediate consumption of antibiotics and treatment. This is a serious and life threatening condition. This condition can cause among other things sepsis, shock, organ failure, the need for a temporary or permanent colostomy bag, and other complications including death. On several occasions, Dr. Gharfeh requested that his father be transported off the ship so that Mr. Gharfeh would be able to receive proper medical treatment. Each time, the cruise physicians and the cruise medical staff refused these requests.

27.    The Carnival medical staff contacted one of Carnival's shipboard physicians, Catalina Carvajal, who again refused to give Dr. Gharfeh appropriate antibiotics for his father. As a result of the failure to provide appropriate emergency medical care, the failure to properly diagnose, the failure to properly treat, the failure to provide the appropriate oral antibiotics, and the lack of attention resulting in an emergent situation, Mr. Gharfeh at midnight on the day after

the incident became febrile. His blood pressure began to drop overnight. The following morning at approximately 6:00 a.m. seeing his father's deteriorating condition, Dr. Gharfeh asked that his father be taken off the ship immediately and was refused.

28.     Carnival's Medical Center refused to provide Dr. Majed Gharfeh with the requested antibiotics without a prescription at 2:30 p.m.  Carnival's Medical Center refused to allow Dr. Majed Gharfeh to fill the requested prescription himself.  Dr. Majed Gharfeh asked to speak with shipboard doctor on-call.  Carnival's Medical Center nurses told Dr. Majed Gharfeh that the on-call physicians were not available until 3:00 p.m.

29.     Dr. Majed Gharfeh expressed his concern for delaying the appropriate treatment considering the Plaintiff's diverticulitis may be perforated.  Carnival's Medical Center nurses called for Dr. Catalina Carvajal.  Dr. Carvajal refused to provide the appropriate antibiotics to Dr. Majed Gharfeh.

30.     Dr. Majed Gharfeh requested to speak with someone more senior or higher up in power than Dr. Carvajal.  Carnival's Medical Center staff told Dr. Majed Gharfeh that there was nobody higher up and refused to allow Dr. Gharfeh to speak with Carnival's medical director in Miami, Florida.

31.     Carnival's Guest Services staff member, Jennifer Davis, arrived at the Medical Center.  Dr. Gharfeh overheard Dr. Carvajal report to Ms. Davis that that Dr. Gharfeh was being rude.  Ms. Davis told Dr. Carvajal that she would support the medical team with whatever plan of action they wanted.  Jennifer Davis told Dr. Gharfeh that Carnival refused to provide the antibiotics because it would violate cruise protocol.  Ms. Davis from Guest Services insisted that the Medical Team should see the Plaintiff first.  Dr. Gharfeh requested the Medical Center staff go to the Plaintiff's room because he was in too much pain to go to the Medical Center.  Carnival's medical

team told Dr. Gharfeh that Guest Services could make such arrangements, that is for the medical staff to go to the passenger's cabin, but that Guest Services refused to make these arrangements.

32.     At 2:50 p.m. Dr. Gharfeh went to Guest Services to speak with the Guest Services Manager.  Carnival's Guest Services crewmember Bogani told Dr. Gharfeh that there was nobody available to speak with him.  At 3:00 p.m. Guest Services crewmember Jennifer Davis once again told Dr. Gharfeh that she was aware of the Plaintiff's emergency, but refused to provide the requested medical assistance.  Dr. Gharfeh requested to speak with a director senior to Ms. Davis. Ms. Davis stated that nobody was available and were all in meetings.

33.     At 3:15 p.m. Wroblewski Luhorna from Guest Services spoke with Dr. Gharfeh and stated that Carnival refused to provide the appropriate antibiotics despite the fact that Dr. Gharfeh provided her with his medical physician identification.  Ms. Luhorna also refused to allow Dr. Carvajal to go to the Plaintiff's cabin without charge to confirm Dr. Gharfeh's diagnosis.

34.     At 4:00 p.m. Mrs. Gharfeh, the Plaintiff's wife, called 911 for the Plaintiff and only then would Carnival's Medical Center staff respond to the Plaintiff's room.  Dr. Carvajal refused to prescribe antibiotics for the Plaintiff's diverticulitis.  Dr. Gharfeh asked what type of imaging equipment Carnival kept aboard the ship in order to examine the Plaintiff.  Dr. Carvajal said she did not understand or recognized the importance of the question.  After further questioning, Dr. Carvajal revealed that the ship's x-ray board was broken.

35.     Carnival's Medical Team transferred the Plaintiff down to the Medical Center and Dr. Carvajal diagnosed the Plaintiff with a small bowel obstruction.  Dr. Gharfeh asked that she check the Plaintiff's lactate.  Dr. Carvajal said that Carnival's Medical Center did not have that onboard the ship or the appropriate IV antibiotics to properly treat the Plaintiff.  Dr. Gharfeh asked that the Plaintiff be emergently evacuated from the ship by helicopter for the proper treatment.

16

Jennifer Davis from Guest Services stated that it was not Dr. Gharfeh's call to make.  Dr. Carvajal did not consult the Captain of the ship, but rather told Dr. Gharfeh that Carnival refused to emergently evacuate the Plaintiff by helicopter for the appropriate treatment.

36.     By midnight, the Plaintiff became febrile and developed a fever.  The Plaintiff's blood pressure dropped over night.  At 6 a.m. Carnival still refused to take the Plaintiff off ship until it docked.

37.     Once the Defendant's ship docked in Galveston, Texas, the Defendant refused to allow the Plaintiff to immediately disembark the ship.  Instead, the Plaintiff was forced to remain onboard despite the fact that his vitals started to crash.  Dr. Carvajal put the Plaintiff on pressors through a peripheral IV, which is not the standard of care and caused further delay in transporting the Plaintiff to the University of Texas Medical Branch.

38.     After an hour at the dock, the Plaintiff disembarked the ship and Emergency Medical Services Authority transported the Plaintiff to the University of Texas Medical Branch. The Emergency Medical Services Authority refused to use lights and siren while transporting the Plaintiff because the cruise line had advised the medical transport that the Plaintiff's condition was not a medical emergency.

39.     The Plaintiff eventually arrived at the hospital and was placed on a central line, intubated and taken for a CT scan which confirmed the Plaintiff's perforated diverticulitis.  The surgical team told the Plaintiff's family they were playing 'catch up' from the lack of medical attention the Plaintiff had received onboard the ship.

40.     The Defendants' negligence above caused the plaintiff to suffer significant and permanent injury.  The misdiagnosis and therefore delay in proper treatment and mistreatment caused and allowed the infection and diverticulitis to strengthen and spread.  The diverticulitis

caused bowl perforation which in turn spread the infection into the Plaintiff's gut causing septic shock.   As a result of the negligence of the Defendants, including but not limited to the misdiagnosis of Plaintiff's condition, failure to conduct adequate and appropriate diagnostic testing, lack of care, failure to monitor the Plaintiff's medical condition, failure to administer the correct medications, failure to transport to a hospital, and failure to evacuate the Plaintiff off of the ship, the Plaintiff went into septic shock from his perforated diverticulitis which caused a series of surgeries and complications, all of which could have been prevented with a proper timely diagnosis and treatment.

41.    The Plaintiff suffered the following injuries due to the Defendants' negligence aboard the subject cruise ship which include, but are not limited to: perforated diverticulitis, severe peritonitis, bacterial sepsis, fistula, persistent contaminated peritoneum, sepsis-induced cardiomyopathy, septic shock with multi organ failure, multiple abdominal abscess infections with associated fever requiring drainage by interventional radiology, cellulitis of abdominal wall, pneumothorax requiring chest tube placement, respiratory failure requiring intubation, acute respiratory distress syndrome and multisystem organ failure, mild aortic aneurysm, stroke, excessive sinus tachycardia, supraventricular tachycardia, atrial fibrillation with rapid ventricular rate, congestive heart failure with systolic and diastolic dysfunction, arrhythmia, renal failure requiring continuous dialysis, acute kidney injury, severe dysphagia with aspiration with associated cough, splenic and hepatic hematoma/abscesses, severe anemia requiring transfusion, hypotension, nonunion gap metabolic acidosis, excessive dry mouth and thrush, clostridium difficile colitis with associated diarrhea, enterocutaneous fistulas, sacral decubitus ulcer, vesicointestinal fistula, vitamin B12 deficiency, profound protein-caloric malnutrition, severe deconditioning, cellulitis of right lower limb, gait disorder, neuropathy of right plantar area,

amyotrophia, profound weakness with functional paraplegia, critical illness myopathy.  Some or all of these conditions are permanent as a result of the failures described above.

<u>COUNT I:</u>
<u>NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE</u>

42.     The Plaintiff, SAMIR GHARFEH, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 41, above.

43.     This is an action for negligent medical treatment of the Plaintiff by the shipboard physicians and medical staff.  The cruise line is liable for the negligence for the shipboard physicians and medical staff because of the relationship to the physicians and medical staff as an actual agent or apparent agent or joint venture of the Defendant cruise line as alleged above.

44.     The Defendant cruise line is in the business of providing medical services to its passengers. The cruise line also benefits from providing such services. The fact that the cruise line has a Medical Center onboard its ships and represents to the public that "the medical staff is on call 24 hours a day for emergencies" attracts prospective passengers to purchase tickets on the cruise line which cruises go to foreign countries, often third world countries, with little or no medical care for such passengers.

45.     At all times material to this action, the shipboard physicians, including Dr. Catalina Carvajal, and all the shipboard medical staff, were employees or agents of the cruise line who were acting within the course and scope of their employment or agency.

46.     At all times material to this action, the Defendant cruise line represented to the passengers onboard the subject cruise ship including the Plaintiff herein that the ship's doctor was the cruise line's actual agent, apparent agent, employee, and/or servant in one or all of the following ways:

a.   Defendant controls cruise line physicians attire, which included, at times, a uniform with epaulettes and stripes similar to other crewmembers;

b.   The Defendant cruise line offers physicians benefits including, but not limited to senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

c.   Defendant controlled the pricing of services provided in the Defendant's Medical Center by shipboard physicians such as Dr. Carvajal;

d.   Defendant required that passengers seeking medical attention do so in the shipboard Medical Center with the shipboard doctors including Dr. Carvajal;

e.   Defendant charged Plaintiff directly for the shipboard physician services, including Dr. Carvajal, by using Plaintiff's shipboard charge card, which also served as his cabin room key, immediately following the receipt of services in the Defendant's Medical Center;

f.   Dr. Carvajal represented herself as an employee of Carnival Cruise Line;

g.   The Defendant required that shipboard physicians, including Dr. Carvajal, sail with the ship;

h.   The Defendant cruise line requires that the ship's physicians to sail with the ship;

i.   The Defendant cruise line provides the onboard Medical Center;

j.   The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

k.   The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the

medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

l.   The ship's physicians represent themselves to passengers that they are an employee of Carnival Cruise Line;

m. The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

n.   The Defendant publishes the Medical Center's daily office hours in its "Fun Times" flyer distributed to all passengers aboard its ships;

o.   The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies;

p.   The Defendant controlled where the shipboard physicians provided medical services by requiring that they operate out of the Defendant's onboard Medical Center;

q.   The Defendant provided the onboard Medical Center and provided within that Medical Center the medical equipment, diagnostic machines, disposable goods, medications, and other materials necessary for the onboard physicians including Dr. Carvajal to provide services; and

r.   The Defendant exercises control over whether to terminate the employment relationship of the shipboard physicians and medical staff with the Defendant.

47.   The cruise line acknowledged that the shipboard physicians, including Dr. Carvajal would act for it by designating them as a shipboard physician and by requiring them to operate out of the Carnival's Medical Center. The shipboard physicians, including Dr. Carvajal, manifested an acceptance of this undertaking by accepting this position of shipboard physician and by

providing medical care to Defendant's passengers, including the Plaintiff herein. The Defendant, as principal, exercised control over the shipboard physician's actions in the ways described above.

48.     The cruise line acted as a joint venturer with the shipboard medical physicians, including Dr. Carvajal, and the medical staff in order to provide Carnival cruise ship passengers medical care aboard Carnival ships.   The elements of this joint venture are described in the initial paragraphs in this complaint.

49.     The Defendant cruise line and the onboard doctor owed a duty to provide medical care and treatment to its passengers which was proper and reasonable under the circumstances and within the standard of care. These duties arise in this case from the law and from the fact and circumstances of this cruise which includes but is not limited to the following: (a) the Defendant cruise line's duty under the General Maritime Law to provide its passengers with a voyage and a ship which are reasonably safe or reasonably safe under the circumstances; (b) the Defendant cruise line's representations in its advertising and literature that the cruise line provides a medical Center; (c) the Defendant cruise line's holding out the ship's physicians as its apparent agent; (d) the Defendant cruise line's voluntary undertaking in this case to provide medical care and treatment to the Plaintiff; (e) the cruise ship is in fact isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (f) the cruise line and this ship caters to U.S. citizens who are used to and expect first world medical care; (g) the cruise line markets this cruise as safe and secure for its passengers; and (h) the subject cruise ship plies the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

50.     The Defendant's shipboard physicians and medical staff's unfitness and incompetence to provide adequate medical services caused Plaintiff's injuries.  The Defendant's

onboard physicians and medical staff failed to administer the medical care and treatment which was necessary and reasonable and which complied with the standard of care for the treatment of the Plaintiff herein.  The Defendant cruise line and the shipboard physicians, including Dr. Carvajal, breached and violated the duties it owed toward the Plaintiff herein by its actions and conduct.  The Defendant's actual agent, apparent agent, employee, and/or servant, Dr. Carvajal and the onboard medical staff, failed to properly assess Plaintiff's medical condition and correctly diagnose Plaintiff's medical condition.  The shipboard physicians, including Dr. Carvajal, and the medical staff failed to conduct a thorough examination of Plaintiff by failing to order appropriate diagnostic testing and scans to further assess the extent of Plaintiff's lower abdominal pain.  Dr. Carvajal failed to recognize and treat the Plaintiff correctly given his medical emergency as more fully described.  Because Dr. Carvajal and the medical staff failed to recognize the emergent nature of the Plaintiff's medical condition, she failed to immediately recommend, provide, allow, and arrange for the Plaintiff to emergently disembark the cruise ship by helicopter or divert the ship's course for the Plaintiff to receive emergent medical treatment at a nearby hospital on February 12, 2016.  As a direct result of the shipboard physicians and medical staff's failings, the Plaintiff's condition deteriorated and the Plaintiff went into septic shock from his perforated diverticulitis which caused a series of surgeries and complications, all of which could have been prevented.

51.     The Defendant cruise line knew or should have known the limitations in terms of quality and competency of medical professionals onboard, in terms of the equipment, supplies and medications and in terms of the ability of that system onboard to cope or deal with significant medical emergencies and breached its duty of ordinary reasonable care in its representations to the public and to the Plaintiff herein all of the facts about the limitations in terms of quality and the ability of the system onboard to cope or deal with significant medical emergencies.

52.     Both the Defendant cruise line and shipboard physicians and medical staff failed to warn the Plaintiff that the medical center and staff were not equipped to properly handle the Plaintiff's condition.  The cruise line knew or should have known to warn the Plaintiff directly or through the shipboard physicians and medical staff as to the medical center's, physicians, and medical staff's limitations to provide medical services due to competency, training and experience, medical supplies, medical equipment, and medications to passengers.  The cruise line knew or should have known to warn passengers prior to boarding its ships as to the limitations of the medical center's, physicians' and medical staff's ability to provide medical services due to competency, training and experience, medical supplies, medical equipment, and medications to passengers.

53.     The Plaintiff herein while under the care and treatment of the ship's physicians, including Dr. Carvajal, was treated improperly and unreasonably under the circumstances, below the standard of care, and negligently as more fully described in the paragraphs above. The negligent acts of the Defendant occurred aboard the Defendant's ship caused severe and permanent damage to the organs of Plaintiff on February 12, 2016, and setting in motion the deterioration of the Plaintiff.  As a direct and proximate result of the negligence of the ship's medical staff including the onboard doctor as described above, the Plaintiff suffered a perforated diverticulitis which nearly caused the Plaintiff's death and required multiple subsequent surgeries, procedures and complications.

54.     The cruise line is liable for the shipboard physicians and medical staff's negligent treatment because of their joint venture and actual and apparent agency.  The cruise line also is responsible for selecting and monitoring the services provided by the company or companies it chooses to joint venture with or to contract with to provide medical services to Carnival's cruise ship passengers.  As a direct result of the shipboard physicians and medical staff's negligent

treatment, for which the cruise line bears responsibility, the Plaintiff's condition deteriorated, his diverticulitis perforated and leaked throughout his body causing permanent injury and nearly causing his death.

55. The Defendants' negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendants for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT MEDICAL CARE – DIRECT LIABILITY
## OF DOCTOR CATALINA CARVAJAL

56.     Plaintiff readopts and re-alleges each and every allegation in Paragraphs 1-41, above.

57.     This is an action for negligent medical treatment of the Plaintiff by Dr. Catalina Carvajal, a shipboard physician.

58.     At all times material hereto, Defendant Catalina Carvajal held herself out to the public in general and to the Decedent herein as a healthcare provider who was capable of and who undertook the corresponding duty to the Plaintiff of providing medical services to the Plaintiff in accordance with that level of care and skill that is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers under the same or similar circumstances.

59.     Notwithstanding the duties undertaken, Defendant Carvajal breached the duties she owed to the Plaintiff.  Dr. Carvajal failed to properly recognized and diagnose the plaintiff's condition.  Dr. Carvajal failed to prescribe antibiotics or other medications appropriate for diverticulitis or for perforated diverticulitis.  Dr. Carvajal failed to timely examine and recognized the Plaintiff's condition while the Plaintiff was in his cabin and in too much pain to physically walk to the Medical Center without assistance.  Dr. Carvajal failed to correctly diagnose the Plaintiff upon his first presentation to the Medical Center.  Dr. Carvajal failed to order appropriate diagnostic testing and scans to further assess the extent of Plaintiff's lower abdominal pain..  Dr. Carvajal failed to treat the Plaintiff even as his condition worsened.  Dr. Carvajal failed to advise and/or request the Carnival *Freedom*'s Ship Captain of the emergent need of getting the Plaintiff off the ship and for emergent treatment in a shore side hospital due to the onboard Medical Center's inability to adequately address Plaintiff's medical emergency.  Dr. Carvajal failed to use or ask for resources such as manuals and treatises, access or use reasonable procedures to contact medical professionals in the United States for consultation about the care and treatment for the Plaintiff's condition.

60.     These failures constituted unreasonable and below standard medical care.

61.     The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.  As a direct result of Dr. Carvjal's failings, the Plaintiff's condition deteriorated and the Plaintiff went into septic shock from his perforated diverticulitis which caused a series of surgeries and complications, all of which could have been prevented.

62.     The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic

damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT PROVISIONING AND EQUIPPING OF MEDICAL FACILITY – DIRECT LIABILITY OF THE CRUISE LINE

63.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-41, above.

64.     This is an action for negligence of the Defendant cruise line in failing to provide reasonable medical facilities onboard its ship, the Carnival *Freedom*.

65.     The Defendant cruise line has a duty to properly man the ship's medical facilities, to provide the appropriate resources to the medical staff, and to provide reasonable and appropriate equipment, supplies, and medications for the ship's medical facility.

66.     These duties arise in this case from the law and from the fact and circumstances of this cruise which includes but is not limited to the following: (a) the Defendant cruise line's duty under the General Maritime Law to provide its passengers with a voyage and a ship which are reasonably safe or reasonably safe under the circumstances; (b) the Defendant cruise line's representations in its advertising and literature that the cruise line provides a medical facility; (c) the Defendant cruise line's holding out the ship's physicians as its apparent agent; (d) the Defendant cruise line's voluntary undertaking in this case to provide medical care and treatment to the Plaintiff; (e) the cruise ship is in fact isolated on the open seas for periods of time and thus

the only medical care reasonably available to the passenger is onboard the ship; (f) the cruise line and this ship caters to U.S. citizens who are used to and expect first world medical care; (g) the cruise line markets this cruise as safe and secure for its passengers; and (h) the subject cruise ship plies the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

67.     The Defendant is involved in the business of providing medical care and owns and operates the onboard medical centers aboard its ships which are staffed with physicians and medical staff whom the cruise line hired, trained, outfitted, paid, and controlled.  The Defendant also paid to stock its medical centers with supplies, various medicines and medical equipment. The Defendant therefore knows about its purchases and has institutional knowledge of medicine

68.     The cruise line breached its duty of reasonable care under the circumstances in this case by its actions and conduct.  The Defendant failed to supply its shipboard medical center with resources such as manuals and treatises, and access and reasonable procedures for contacting medical professionals in the United States for consultation about the care and treatment of significant medical conditions of its passengers including the Plaintiff.  The Defendant knew or should have known to appropriately stock its shipboard Medical Center with adequate diagnostic and medical testing equipment and medications, but failed to properly provide its shipboard medical facility with properly the equipment, supplies, and resources which they should have there to provide for the medical care of thousands of people onboard its ships which ply the waters off of third world countries with third world medical care.

69.     The Plaintiff herein while under the care and treatment of the ship's physicians, including Dr. Carvajal, was treated improperly and unreasonably under the circumstances, below the standard of care, and negligently as more fully described in the paragraphs above. The negligent acts of the Defendant occurred aboard the Defendant's ship caused severe and permanent

damage to the organs of Plaintiff on February 12, 2016, and setting in motion the deterioration of the Plaintiff. As a direct and proximate result of the negligence of the ship's medical staff including the onboard doctor as described above, the Plaintiff suffered a perforated diverticulitis which nearly caused the Plaintiff's death and required multiple subsequent surgeries, procedures and complications.

70.     The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO EVACUATE PASSENGER AND/OR EVACUATE
## PASSENGER APPROPRIATELY – DIRECT LIABILITY OF THE CRUISE LINE

71.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-41, above.

72.     This is an action for negligence of the Defendant cruise based of Carnival in failing to evacuate the passenger who was in need of urgent or emergent medical care.  The cruise line failed to arrange for this evacuation, advise the passengers that evacuation was possible and how it was possible, divert the course of the ship to ensure that the ship was in port sooner than it was, and failure to arrange or provide air or sea evacuation from the ship in order to obtain medical care ashore.  The cruise line personnel also refused the requests and demands of the Plaintiff and of his family to arrange for and allow a timely evacuation of the plaintiff in order for the plaintiff to receive urgent or emergent medical care ashore when it became clear that the passenger's medical emergency required such care.

73.     Carnival through the ship's command and through the home office owes a duty to provide reasonable and proper transportation of its passengers including the Plaintiff herein who are suffering from a significant medical problem. The duty is to provide such transportation (a) to get that passenger to the nearest hospital when the passenger is on land if time is of the essence or critical in the medical treatment of the passenger; (b) by evacuating the passenger off of the ship by air or sea; and/or (c) to the nearest port by means of diverting the ship when the diversion of the ship's course will make significant effect on a significant medical condition of the passenger.

74.     Carnival through the ship's command and through the home office breached its duty to the Plaintiff herein to provide reasonable and proper transportation of the Plaintiff who was at the time of this cruise suffering from a significant medical problem. The Defendant Carnival breached its duties by failing to transport the Plaintiff to a nearby hospital immediately upon the

Plaintiff's progression of symptoms consistent with perforated diverticulitis to the ship's Medical Center on February 12, 2016; failing to evacuate the Plaintiff off of the ship by means of a helicopter or other medivac transport mechanism on February 12, 2016, when Plaintiff's condition was deteriorating; failing to transport the Plaintiff to the nearest port by means of diverting the ship when the diversion of the ship's course would have made a significant effect on a significant medical condition of the Plaintiff; and failing to properly advise the closest Medical Facility and Emergent Transport the emergent nature of the Plaintiff's deteriorating condition.

75.     Once it was apparent that the Plaintiff's condition was worsening due to the Defendant Carnival's initial negligence the measures of transporting the Plaintiff off of the ship and/or diverting the ship's course should have been taken to minimize further damage to the Plaintiff and Plaintiff's vital organs.

76.     Carnival knew of Plaintiff's medical emergency because Carnival's Medical Staff were advised of the Plaintiff's condition by his son Dr. Gharfeh as well as their own opportunity to evaluate the Plaintiff's physical condition.  Carnival further knew or should have known of Plaintiff's ongoing health emergency because the Plaintiff was under the care of Carnival's apparent agents, Defendant Carvajal and other Carnival Medical Center employees. Such care was provided to Plaintiff inside the onboard Medical Center which is owned and outfitted with supplies by Defendant Carnival.

77.     As a direct result of the Defendant's prolonged delay to evacuate the Plaintiff off the subject ship on a timely basis for urgent or emergent basis, the shipboard physicians and medical personnel continued in providing faulty medical care without antibiotics, wrong antibiotics and with care which did not comport with the standard of care and thereby continued the prolonged delay of proper medical treatment.  The Plaintiff's condition therefore deteriorated and the Plaintiff went

into septic shock from his perforated diverticulitis which caused a series of surgeries and complications, all of which could have been prevented.

78.     The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT HIRING, SELECTION, RETENTION, MONITORING, AND TRAINING**
**OF THE ONBOARD MEDICAL STAFF – DIRECT LIABILITY OF THE CRUISE LINE**

79.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs

1-41, above.

80.     This is an action for negligence due to Carnival's negligent hiring, selection,

retention, monitoring, and training of the onboard medical staff including Defendant Catalina

Carvajal.

81.     Carnival owes a duty to provide medical care and treatment to its passengers and

to the Plaintiff herein which is proper and reasonable under the circumstances and within the

standard of care. These duties arise in this case from the law and from the facts and circumstances

of this cruise which includes but is not limited to the following: (a) Carnival's duty under the

General Maritime Law to provide its passengers with a voyage and a ship which are reasonably

safe or reasonably safe under the circumstances; (b) Carnival's representations in its advertising

and literature that the cruise line provides a medical facility, and that the ship provides medical

staff that is on call 24 hours a day for emergencies; (c) Carnival's holding out the ship's physicians

as its apparent agent; (d) Carnival's apparent agent physicians' failure to provide medical care and

properly diagnose and treat the Plaintiff; (e) the cruise ship is in fact isolated on the open seas for

periods of time and thus the only medical care reasonably available to the passenger is onboard

the ship; (f) Carnival caters to predominately U.S. citizens who are used to and expect first world

medical care; (g) Carnival markets this cruise as safe and secure for its passengers, and (h) the

subject cruise ship plies the waters off of third world countries with third world medical care which

is either non-existent or below the standard of care for medical care in the United States and

elsewhere.

82.    Carnival owes a duty to use reasonable care in selecting competent medical staff and medical staffing agencies.  Carnival, as a result of its duties to provide its passengers medical care which is reasonable under the circumstances, owes a duty to reasonably hire, select, retain, monitor, and train its onboard medical staff.

83.    Carnival failed to reasonably hire, select, retain, monitor, and train its onboard medical staff on the subject ship.  Dr. Carvajal was not equipped either through her education, training, skills, or environment provided to her by the ship itself, to properly diagnose the Plaintiff's condition, to create a reasonable plan for the care and treatment of the Plaintiff, or to insist to the ship's command or arrange for the evacuation of the Plaintiff off of the ship.

84.    The Defendant knew or should have known to investigate Dr. Carvajal's educational credentials and training.  Carnival breached its duty to screen its shipboard physicians, including Dr. Carvajal, in order to provide a qualified and competent physician.  The Defendant failed to adequately investigate its shipboard physicians' background, including prior employment with other cruise lines and medical providers as well as educational credentials and recent training.

85.    The Defendant knew or should of known to provide adequate training to shipboard medical personnel regarding all aspects of providing shipboard medical care, including situations where passengers should be transported off of the ship.  The Defendant failed to provide Dr. Carvajal and the medical staff the necessary training as to all aspects of shipboard medical care. As a result of the Defendant's failure to monitor and provide adequate training to its shipboard medical staff, Dr. Carvajal failed to order that the Plaintiff be transported off of the ship.

86.    The Defendant owes a duty to use reasonable care to monitor the activities of onboard medical personnel in the shipboard Medical Center, including Defendant Carvajal.  The Defendant also knew or should have known not to retain incompetent physicians or medical personnel with insufficient experience in emergency medical care, including Defendant Carvajal.

The Defendant knew or should have known of the Dr. Carvajal's unfitness to provide adequate medical care to its shipboard passengers. The Defendant breached its duty to use reasonable care to monitor and retain physicians who were equipped through experience, education, skills, training, or environment to properly examine, diagnose and treat the Plaintiff's severe medical condition.

87.     The shipboard physicians and medical staff did not have the mental temperament and analytical abilities and did not have sufficient knowledge and training to properly diagnose or to create a reasonable and appropriate plan for urgent or emergent care and treatment including evacuation of the patient and getting the Plaintiff to a medical center on an expedited basis appropriate for urgent or emergent care.  The Plaintiff's condition therefore deteriorated and the Plaintiff went into septic shock from his perforated diverticulitis which caused a series of surgeries and complications, all of which could have been prevented.

88.     The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future;

lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**BREACH OF THIRD PARTY BENEFICIARY CONTRACT**
**AS TO DEFENDANT CARNIVAL**

89.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-41, above.

90.     This is an action for negligence of the Defendants whereby Carnival and the shipboard physicians and medical staff breached a contract in which the passenger was an intended third party beneficiary.

91.     Carnival and the shipboard physicians and medical staff entered into a contract as evinced by their conduct and, based on information and belief, written agreement(s).

92.     An implied term of the subject contract between Carnival and the shipboard physicians and medical staff was that the shipboard physicians and medical staff would provide medical services onboard Carnival's cruise ship for the benefit of Carnival's cruise passengers.

93.     It was the clear and manifest intent of Carnival that the shipboard physicians and medical staff contract primarily and directly benefit the intended third party beneficiaries of this contract, which were all of Carnival's cruise passengers, including the Plaintiff.

94.     One of the implied terms of this contract was that the medical services provided by Carnival through the shipboard physicians and medical staff would be reasonable under the circumstances and within the standard of care.

95.     Carnival and the shipboard physicians and medical staff breached this contract by their actions and conduct.  Carnival and the shipboard physicians and medical staff failed to properly assess the Plaintiff's medical condition and correctly diagnose Plaintiff's medical condition.  Carnival and the shipboard physicians and medical staff failed to order appropriate diagnostic testing and scans to further assess the extent of Plaintiff's condition.  Carnival and the shipboard physicians and medical staff failed to immediately recommend, provide, allow, and arrange for the Plaintiff to disembark the cruise ship on February 12, 2016, and receive treatment at a nearby hospital.  Carnival and the shipboard physicians and medical staff failed to properly monitor or obtain consultations from appropriate specialists for the Plaintiff's condition.  Carnival and the shipboard physicians and medical staff failed to select, hire, retain, monitor and/or train competent medical staff including medical physicians.  Carnival failed to provide its shipboard medical center properly trained physicians and medical staff, and the equipment, supplies, and resources which they should have in its medical center to provide medical care to thousands of passengers, including the Plaintiff, onboard its ships.  Carnival and the shipboard physicians and medical staff failed to represent to the public and the Plaintiff herein all of the facts as to the limitations in terms of quality and competency of medical professionals onboard, in terms of the equipment and supplies, and in terms of the ability that system onboard to cope or deal with significant medical emergencies.  Carnival failed to provide the shipboard physicians and medical staff resources such as manuals and treaties, and access and reasonable procedures for contacting medical professionals in the United States for consultation about the care and treatment of significant medical conditions of its passengers including the Plaintiff herein.  Carnival and the shipboard physicians and medical staff failed to administer the medical care and treatment which was necessary and reasonable and which complied with the standard of care for the treatment of the Plaintiff herein.

96.     These failures constituted breaches of the third-party beneficiary contract and constituted unreasonable and below standard medical care.

97.     As a result of the Defendants breach of this contract, the Plaintiff, an intended third party beneficiary, suffered significant and permanent injury to his organs on February 12, 2016 and the Plaintiff's condition deteriorated and the Plaintiff went into septic shock from his perforated diverticulitis which caused a series of surgeries and complications, all of which could have been prevented.

98.     The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident

under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:  *s/ John H. Hickey*
**John H. Hickey, Esq.** (FBN 305081)
federalcourtfilings@hickeylawfirm.com
**Hickey Law Firm, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*