# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 17-20499-CIV-GOODMAN
### [CONSENT CASE]

SAMIR GHARFEH,

     Plaintiff,

v.

CARNIVAL CORPORATION, et al.,

     Defendants.

_____/

## <u>ORDER ON CARNIVAL'S MOTION TO DISMISS AMENDED COMPLAINT</u>

After the Court granted in small part Defendant Carnival Corporation's motion to dismiss the negligence-based Complaint filed by Plaintiff Samir Gharfeh, he filed an amended complaint. [ECF Nos. 12; 50; 53]. Carnival has once again moved to dismiss. [ECF No. 58]. Gharfeh filed an opposition response, and Carnival filed a reply. [ECF Nos. 59–60].

For the reasons outlined below, the Undersigned **grants the motion in part** and **denies it in part**. Plaintiff has 14 days from the date of this Order to file an optional second amended complaint.

## I.    Factual and Procedural Background

The Court outlined the factual allegations underlying Gharfeh's lawsuit in the initial dismissal Order, and I will not repeat the summary here. For present purposes,

suffice it to say that his amended lawsuit arises from a cruise he took as a passenger aboard the *Carnival Freedom* in February 2016. It focuses on the care and treatment he received (or did not receive) while a passenger aboard the ship. He alleges that he received substandard care in myriad ways. The Court will discuss the specifics in the analysis of each count, all of which Carnival seeks to dismiss. One of the counts is against the doctor, who Gharfeh has apparently not served and who has not filed a response to the amended complaint. That count (i.e., Count IV) will therefore not be discussed. All other counts are against Carnival.

Count I is for negligent medical treatment by the shipboard physicians and medical staff under a vicarious liability theory based on actual agency and respondeat superior. Count II is also based on the same medical treatment and is also based on vicarious liability, but seeks damages under an apparent agency/agency-by-estoppel theory. Count III is based on the negligent medical treatment by the one shipboard physician and is premised on a third type of vicarious liability: a purported joint venture (to provide medical services to cruise passengers) between the doctor and Carnival. Count V is a direct liability claim for negligently provisioning and equipping the ship's medical facility. Count VI also asserts a direct liability claim, but this count is for the negligent failure to timely evacuate Gharfeh. Count VII, also a direct liability count, alleges negligent hiring, retention, monitoring, and training of the onboard medical staff, including the onboard physician.

## II.     Carnival's Defense Contentions

Carnival argues that Counts I, II, and III should be dismissed because they are "shotgun" pleadings that impermissibly comingle multiple claims. Specifically, Carnival contends that these three counts, although purporting to assert claims only for vicarious liability, also assert claims for *direct* negligence.

Carnival also challenges Count II on substantive grounds, arguing that Gharfeh did not adequately allege an apparent-agency type of negligence claim because he did not allege that he had a reasonable belief that the doctor or any other medical staff member was acting as Carnival's agent and because he did not allege facts indicating that he reasonably relied on any Carnival representation **about the doctor's agency status** in selecting the cruise or in seeking medical attention.

For Count III, Carnival argues that Gharfeh did not adequately allege a vicarious liability claim based on Carnival's alleged joint venture with the shipboard doctor.

Also, Carnival contends that Counts V, VI, and VII should be stricken because Gharfeh impermissibly modified the counts by adding alleged breaches of duties and other grounds for liability without leave of Court.

Carnival then repeats the substantive arguments it unsuccessfully raised about these counts in the initial complaint. It says Count V should be dismissed because Carnival has no duty to provide reasonable medical facilities onboard its ship. It contends that Count VI should be dismissed because it has no direct duty to evacuate

passengers in need of medical care. Finally, Carnival contends that Count VII should be dismissed because Gharfeh does not allege sufficient facts demonstrating how or why Carnival knew or should have known of the doctor's alleged incompetence and because it has no obligation to monitor or train the onboard doctor or medical staff it provides for the passengers.

## III.    Applicable Legal Standards

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### The "Shotgun" Pleading Rule

As noted in my initial Order on the first motion to dismiss, the Eleventh Circuit provided a comprehensive guide to the applicable rules governing the shotgun pleading problem in *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 10(b) further provides that "a party must state its claims or defenses in numbered paragraphs, each limited to a single set of circumstances." Fed. R. Civ. P. 10(b). Recognizing that courts sometimes used the term "shotgun pleading" to "mean little more than 'poorly drafted complaint,'" the *Weiland* Court identified four types or categories of shotgun pleadings. *Weiland*, 792 F.3d at 1321.

The "unifying characteristic" of all categories of impermissible shotgun pleadings is "that they fail to one degree or another, and in one way or another, to give

the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

The "third type of shotgun pleading . . . commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322–23; *see generally Bickerstaff Clay Prod. Co. v. Harris Cty., Ga. By & Through Bd. of Comm'rs*, 89 F.3d 1481, 1485 (11th Cir. 1996) (holding that amended complaint was "a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief."). "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (internal quotations omitted).

### "Agency" Theories

Technically speaking, agency counts, whether labeled as vicarious agency or agency by estoppel, are not really causes of action, but rather theories of liability. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (explaining that the agency theory of liability: "a private person would be liable for its agent's acts occurring within the scope and course of the agency relationship, so long as those acts breached a duty of care owed to the plaintiff and that breach caused the plaintiff to suffer damages."); *see also Gavigan v. Celebrity Cruises, Inc.*, 843 F. Supp. 2d 1254, 1262 (S.D. Fla. 2011) (analyzing apparent-agency theory of liability in a cruise case). "There is no cause of action for 'agency.'" *Lannin v. NCL Bahamas Ltd.*, No. CV 17-23378-CIV, 2018 WL

1175237, at *2 (S.D. Fla. Mar. 5, 2018) (observing that plaintiff's apparent agency counts are "really pleading negligence causes of action that are grounded on an agency theory of liability.") (citing *Barabe v. Apax Partners Europe Managers, Ltd.*, 359 F. App'x 82, 84 (11th Cir. 2009) (holding that "Agency Relationship" count did not constitute an independent cause of action)).

Because there is no cause of action for "agency," a plaintiff seeking to hold a principal liable for the negligence of an apparent agent "must sufficiently allege the elements of apparent agency in addition to the elements of the underlying negligent act of the agent for which the plaintiff seeks to hold the principal liable." *Rojas v. Carnival Corp. ("Rojas I")*, 93 F. Supp. 3d 1305, 1311 (S.D. Fla. 2015) (noting that the plaintiffs "appear to have overlooked this fact" -- i.e., the underlying negligence claim must be adequately asserted).

### The Earlier Dismissal Order

Although there is no independent cause of action for agency, the Court's initial order noted that Count I impermissibly commingled claims for vicarious liability and joint venture and explained that trial courts have inherent authority to control their dockets and to "separate [] apparent and actual agency theories into two separate counts of vicarious liability" to "promote clarity." *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *3, *5 nn. 3, 10 (S.D. Fla. Dec. 7, 2015).

The earlier order also flagged potential substantive flaws with the commingled count, such as inadequate allegations of joint venture. It rejected challenges to other counts but sustained Carnival's motion on the third party beneficiary contract theory in Count VI of the original complaint. Gharfeh did not include a third party beneficiary count in his amended complaint.

## IV.    Analysis

### Gharfeh's Efforts to Eliminate Commingling

In his amended complaint, Gharfeh tried to comply with the no-commingling subsection of the shotgun pleading rule. As noted above, he separated his theories of vicarious liability into three different counts, based on three different theories. Each theory, of course, needs to be based on a sufficiently alleged negligence claim (asserting breaches by Carnival's agents or joint venture partner, which Gharfeh seeks to use against Carnival, as the principal or joint venturer).

### Counts I–III (Overall)

Compared to Gharfeh's first effort to allege vicarious liability counts, his amended complaint is far more organized and significantly less confusing. There is substantially less commingling. But there is still *some* commingling of theories.

Counts I, II and III are all labeled as vicarious liability counts, so there should be little confusion over Gharfeh's *intent.* Although the unequivocal title on each of the three counts announces a vicarious liability theory (as opposed to a direct-liability type

of negligence count), some of the actual allegations make it seem as though these three counts include a direct liability negligence claim against Carnival.

For example, paragraph 36 of the amended complaint alleges that "[t]he Defendant **cruise line** and the onboard doctor and medical staff owed a duty to provide medical care and treatment to its passengers which was proper and reasonable under the circumstances and within the standard of care." [ECF No. 53, p. 14 (emphasis added)]. Similarly, paragraph 37 alleges that "[t]he Defendant **cruise line** and the shipboard physician and medical staff, including Dr. Carvajal, **breached and violated** the duties *it* owed toward the Plaintiff herein by *its* actions and conduct." [ECF No. 53, p. 14 (emphasis added)]. To provide another illustration, paragraph 39 alleges that **"[b]oth** the Defendant **cruise line** and shipboard physicians and medical staff **failed to warn** the Plaintiff that the medical center and staff were not equipped to properly handle the Plaintiff's condition." [ECF No. 53, p. 15 (emphasis added)].

Likewise, paragraph 51 alleges that "[t]he Defendant **cruise line** and the shipboard physician and medical staff, including Dr. Carvajal, breach and violated the duties **it** owed toward the Plaintiff herein by its actions and conduct." [ECF No. 53, p. 22 (emphasis added)]. And paragraph 68 alleges that "[t]he Defendant **cruise line** through its joint venture with Dr. Carvajal failed to recognize and treat the Plaintiff correctly given his medical emergency as more fully described." [ECF No. 53, p. 31 (emphasis added)]. The final numbered paragraph in the vicarious liability counts, paragraph 73,

alleges that "[t]he **Defendants'** negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future." [ECF No. 53, p. 33 (emphasis added)].[1]

All the paragraphs described above are found in Counts I, II or III, which are purportedly for vicarious liability, not direct liability.

In his opposition response, Gharfeh stridently contends that these three counts are for vicarious liability only and that the paragraphs highlighted above "do not allege direct negligence." [ECF No. 59, p. 3]. He concedes a scrivener's error but then argues that other language in Count III "makes it abundantly clear the claim is a theory vicarious liability [sic] based on joint venture." [ECF No. 59, pp. 3–4].

Gharfeh also urges the Court to take a holistic, practical, common-sense approach to the allegations in Counts I, II, and III, explaining that "[w]hen read in their totality, it is clear that these paragraphs do not claim direct negligence, but rather establish the relationship from which the three theories of vicarious liability are premised." [ECF No. 59, p. 4].

Counts I, II, and III are not classic illustrations of clear pleading. They are somewhat confusing because the title (announcing vicarious liability theories) is at times at odds with specific allegations in the counts. Some of the allegations sound like

---

[1] Given that the amended complaint lists only two Defendants -- Carnival and the doctor -- an allegation that the Defendants' (plural) negligence caused damages must, by definition, include the direct liability allegation of negligence against Carnival (in the count that supposedly addresses only vicarious liability theories).

they concern a direct liability theory of negligence. Nevertheless, the Undersigned is not convinced that dismissal would be appropriate here because the confusion does not make it "virtually impossible" for Carnival to know the nature of the overall allegations. *Weiland*, 792 F.2d at 1325.

If this Order did not otherwise dismiss some counts on substantive grounds (which it does), then I likely would not require Gharfeh to replead the allegations in Counts I, II, and III to eliminate the vicarious liability/direct liability confusion. But, as noted below, the Court *is* granting, in part, some of the motion to dismiss. That means that Gharfeh will be filing a second amended complaint. And as long as he will be doing that (to address the substantive legal deficiencies), he might as well clean up the first three counts and make certain he omits any inconsistent allegations concerning direct negligence in the vicarious negligence counts.

## Count II (Apparent Agency)[2]

Carnival challenges the sufficiency of Gharfeh's allegations concerning apparent agency, which is one way he seeks to impose vicarious liability against Carnival. The Undersigned agrees with Carnival and finds the count inadequate.

To adequately state a claim for negligence based on apparent agency, a plaintiff

---

[2] Carnival's motion substantively challenges portions of Count I "to the extent that Plaintiff is attempting to hold [Carnival] *directly* liable for the medical care provided[.]" [ECF No. 58, p. 6]. But, as noted, Gharfeh expressly rejects the notion that Count I (or Counts II and III, for that matter) is one for direct liability. Therefore, the Undersigned will not address legal arguments challenging Count I.

must allege (1) a representation by the principal (i.e., Carnival) to the plaintiff (i.e., Gharfeh), (2) which caused the plaintiff reasonably to believe that the alleged agents (i.e., the doctor and medical staffers) were authorized to act for the principal's benefit, and (3) induced the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014).

Although Gharfeh provides an extensive listing of how Carnival created the appearance that the doctor and staff were Carnival's agents, he did not sufficiently allege his purported **reliance** on Carnival's representations. Thus, he has not stated a claim. Specifically, he "fails to allege any relevant facts with respect to his reliance upon the appearance of the agency." *Lannin*, 2018 WL 1175237, at *2 (dismissing negligence claim against cruise ship operator under apparent-agency type of vicarious liability for failing to allege facts showing detrimental reliance). Moreover, any allegation about reliance (which was not made in the amended complaint) "must describe **reliance upon the *agency* relationship** itself to his detriment." *Id.* (emphasis added); *see also Gavigan*, 843 F. Supp. 2d at 1263, n.4 (emphasizing that "the issue is whether [the passenger] relied on, or changed his position in reliance on, his alleged belief that the doctor was [the cruise ship's] agent")

In short, the Court dismisses Count II without prejudice, giving Gharfeh the opportunity to replead it in a second amended complaint but noting that the requisite reliance factor "is a difficult standard to satisfy." *Gavigan*, 843 F. Supp. 2d at 1263, n.4.

## Count III (Joint Venture)

Carnival contends that Gharfeh did not adequately allege a cause of action for vicarious liability for negligence based on an alleged joint venture between Carnival and the shipboard doctor. As explained below, Gharfeh has adequately *alleged* sufficient factors to state a claim. Whether he can *prove* these allegations is an entirely different matter, and Carnival is, of course, free to raise the challenge again in a summary judgment motion or other trial motion (should the case get to trial).

Another court in our district recently outlined the factors used to assess a joint venture claim. Specifically, the *Lannin* Court succinctly provided the applicable joint venture considerations:

> "The checklist of elements that a district court should consider when analyzing a joint venture claim under federal common law are: (1) intention of the parties to create a joint venture; (2) joint control or joint right of control; (3) joint proprietary interests in the subject matter of the venture; (4) right of both venturers to share in the profits; and (5) duty of both to share in the losses." *Skeen v. Carnival Corp.*, No. 08-22618-CIV, 2009 WL 1117432, at *3 (S.D. Fla. Apr. 24, 2009) (Cooke, J.) (quoting *Fulcher's Point Pride Seafood, Inc. v. M/V "Theodora Maria,"* 752 F. Supp. 1068, 1072 (S.D. Ga. 1990) (internal quotations omitted)).

*Lannin*, 2018 WL 1175237, at *2.

Gharfeh alleged that the cruise line and the doctors aboard the ships engaged in a joint venture. He alleged that they intended to do so. He alleged that there was a "verbal agreement" and a "long-term agreement" to provide medical services to passengers in exchange for payment. [ECF No. 53, p. 26]. He alleged that they

maintained joint control (or the right to control) joint proprietary interests. He further alleged that they had the right to share in the profits and the duty to share in the losses. And he alleged that they "share in profits and losses based on the circumstances of their agreement." [ECF No. 53, p. 29].

Specifically, he also alleged that "[t]he cruise line and shipboard physicians and medical staff share profits and losses and split revenue from medical services and supplies rendered to the thousands of cruise passengers." [ECF No. 53, p. 29]. And he alleged that "Carnival's compensation for the shipboard physicians and medical staff's services is dependent in part on the medical center's revenues[.]" [ECF No. 53, p. 30].

Similar to the Court's observation earlier in this discussion of this count, there is undoubtedly a significant distinction between an allegation and the existence (or non-existence) of evidence to establish the necessary allegations. For now, Gharfeh has stated a cause of action for negligence against Carnival based on a joint venture theory of vicarious liability. Determining whether Gharfeh presents adequate evidence to support those allegations is another question for another day.[3]

---

[3] By way of example only, Gharfeh does not allege any specific facts supporting his allegation that the shipboard doctors have a right to share in Carnival's profits or a duty to share in the losses it suffered. As Carnival correctly explained in its motion, the mere fact that a cruise ship and a doctor it hired "may both earn money as a result of a contractual relationship does not establish a right to share in profits; otherwise, every entity/independent contractor, employer/employee, and principal/agent relationship would satisfy this element." [ECF No. 59, p. 14].

## Counts V, VI and VII (Overall)

Carnival argues that these three counts should be dismissed or stricken because they contain new allegations that were not present in the initial complaint and that the Court did not authorize. It argues that these new allegations are, for all practical purposes, amendments that require either Carnival's consent or leave of Court.

The Court acknowledges that the better practice would have been for Gharfeh to have sought and obtained Carnival's consent before adding new allegations to these counts or, failing that, to have moved for leave. He did not. But under the circumstances, the Undersigned will not dismiss these three counts.

The three counts at issue are not new; they were in the initial complaint. For all practical purposes, they are not based on new theories of liability. Instead, they contain additional factual allegations and more-nuanced and specific contentions about Carnival's alleged direct negligence. Thus, it is unlike *Moyer v. Village of Fort Sumner*, No. 2:13-CV-00164, 2013 WL 12146128 (D.N.M May 30, 2013), where the district court required the plaintiff to seek leave of court before amending aspects of her complaint to

---

The Court notes that the amended complaint does not allege that Dr. Carvajal (or any other doctor who might have been providing medical services on the *Inspiration* during the cruise in question) "had any right to a percentage of [Carnival's] profits." [ECF No. 58, p. 14]. It could be that Gharfeh and his counsel already have evidence to establish this but have decided to not yet disclose it. Or it could be that they hope to acquire this evidence. If they do not have this evidence and also do not have evidence to support the alleged verbal agreement reflecting the purported intent to enter into a joint venture and do not obtain the evidence for these two key considerations, then the joint venture count may have a comparatively short lifespan.

add "a new theory of relief." *Id.* at *7.

Moreover, the earlier dismissal order required Gharfeh to engage in what he describes as "a total revamping of the entire document." [ECF No. 59, p. 15].

But regardless of whether the amended complaint is, in fact, the result of a "total revamping," it is clear that substantial, substantive changes were made. These changes amplified and clarified the factual allegations underlying the counts. At bottom, Carnival is criticizing Gharfeh for providing additional detail. The Court is not going to dismiss these three counts merely because Gharfeh did not obtain consent or leave. Because the Court is not going to dismiss these three counts on the "failure-to-obtain-leave" theory, I see little benefit in now engaging in a finger-wagging exercise, criticizing Gharfeh's counsel for the plunge-ahead approach.

The Undersigned will now turn to Carnival's substantive challenges to these three counts alleging direct liability for negligence.

### Count V (Failure to Provide Adequate Medical Facilities & Equipment)

Carnival argues that it has no duty to even provide medical facilities on its ships, a position it says requires dismissal of the count for violating "a duty to properly man the ship's medical facilities, to provide the appropriate resources to the medical staff, and to provide reasonable and appropriate equipment, supplies, and medications for the ship's medical facility." [ECF No. 53, p. 36].

The Court previously denied Carnival's motion to dismiss this claim, but

Carnival asks that I reconsider my prior ruling.

The Court was not persuaded by Carnival's argument the first time it was presented, and I see nothing in the renewed motion to change the earlier ruling. Also, the issue of whether Carnival has a duty is a non-issue here -- because, regardless of whether it has a duty, Carnival decided to provide a medical facility, doctors, and medical staff for its passengers. Once it did that, regardless of whether it was required, Carnival had a duty to do so reasonably and to exercise "reasonable care under the circumstances" surrounding the operation, staffing, and equipping of the facility it chose to create and staff. *Franza*, 772 F.3d at 1247–48 (explaining that "cruise lines have chosen quite deliberately to enter the business of medicine, often in a large way, and they reap the tangible benefits of this business strategy"); *see also Rojas v. Carnival Corp. ("Rojas II")*, No. 113CV21897LENARDGOOD, 2015 WL 7736475, at *6 (S.D. Fla. Nov. 30, 2015) (explaining that the court need not resolve the legal question of "whether cruise lines have a duty to secure medical transport for passengers who sustain injuries ashore" because "it is undisputed that Carnival assumed the duty to secure medical transport for Plaintiff" and concluding that the duty element of the negligence claim was therefore "clearly established").

If, as the *Franza* Court noted and as Gharfeh alleges here,[4] "cruise lines proudly

_____

[4]     Gharfeh alleges as follows: (1) "Carnival has deliberately chosen to enter the business of medicine by providing medical services to its passengers aboard its ships;" (2) "Carnival reaps the tangible benefits from providing such services as part of its

advertise their own capabilities" and "[s]everal cruise lines now purport to staff extensive land-based medical department with expert personnel," then "it seems hardly anomalous to require cruise lines to bear the burden of this choice." 772 F. 3d at 1247–48).

The Court also acknowledges, as *Franza* did, that "a cruise ship is different from a hospital." *Id.* at 1245. But that hardly means that a cruise ship operator, once it voluntarily decides for business and marketing purposes to create and staff onboard medical facilities, is immune from liability and can with impunity establish a substandard medical facility with inadequate doctors and staff, lacking basic medical equipment reasonably foreseeable for medical emergencies arising during a cruise.

And in any event, Gharfeh's amended complaint does not allege direct negligence against Carnival for failing to have an onboard medical facility that is on par with a shoreside hospital. To the contrary, the gist of the allegations is a failure to reasonably staff with competent doctors and nurses a medical facility that Carnival

business strategy;" (3) "Carnival represents in its marketing materials to prospective passengers for them to rely on these representations that each ship contains an onboard Medical Center which is staffed by doctors and nurses;" (4) Carnival's representations "that the medical staff is on call 24 hours a day for emergencies attracts prospective passengers to purchase tickets for Carnival cruises even though those cruises travel to developing countries and to isolated waters of the world;" (5) Carnival represents that its onboard doctors "meet or exceed the credentialing guidelines established by the cruise ship medicine section of the American College of Emergency Physicians who are experienced with general medicine or general practice including emergency or critical care;" and (6) Carnival represents "that its medical centers are staffed by qualified physicians and nurses who are committed to providing the highest quality of shipboard medical care[.]" [ECF No. 53, pp. 4–5].

opted to establish aboard the *Inspiration.*

Carnival has not cited one post-*Franza* case that supports the notion that a cruise ship operator cannot be held directly liable (and is always and automatically immune) for its negligence for failing to adequately staff and equip an onboard medical facility once the operator decides to operate one and market it to the public. Carnival's theory is fundamentally at odds with *Franza's* practical understanding of the "industry's decision to construct, outfit, and staff medical centers onboard its ships." *Id.* at 1247.

Moreover, the logical consequences of Carnival's position would run counter to *Franza*'s basic policy arguments, such as the position that "we are loath to adopt a principle of law that **always** immunizes a shipowner **without regard to any of the facts**." *Id.* (emphasis added).

Thus, if Carnival's theory were to be adopted, then it could advertise its medical center, persuade prospective passengers to purchase cruise tickets, hire only high school graduates who took a few online first-aid courses, provide aspirin as the only medicine in the medical facility, and fail to provide any equipment beyond a stethoscope and a blood pressure cuff -- and then always avoid direct liability for its own negligence when passengers with medical issues suffered medical complications or even death because of the substandard staffing, medical equipment, and medications. The Undersigned is "loath to adopt" a rule that would yield that type of result.

The only issue before me now concerning Count V is whether it states a cause of

action or whether it should be dismissed. Without opinion or predicting whether Gharfeh will ultimately be able to survive summary judgment or persuade a jury to find Carnival directly liable, the Undersigned concludes (as I did in the earlier order) that Gharfeh has at least stated a claim. Therefore, the Undersigned denies Carnival's motion to dismiss Count V.

### Count VI (Negligent Failure to Evacuate)

I previously rejected Carnival's challenge to Gharfeh's negligent failure to evacuate claim, but Carnival asks me to reconsider, primarily on the ground that *Franza's* holding permitting a negligent failure to evacuate claim to go forward concerned only a *vicarious* liability claim, based on the medical personnel's alleged negligence, not Carnival's direct liability for its breach of duty.

Carnival has not cited any post-*Franza* decision clearly holding that a cruise ship operator can never be held directly liable for failure to secure medical transport for passengers who become ill or who get injured aboard the ship. On the other hand, Gharfeh has not called my attention to any post-*Franza* decisions holding that this duty *does* in fact exist and can support a direct liability claim against the cruise ship operator.

(The Undersigned understands, of course, that *Franza* involved a vicarious liability claim. Nevertheless, it also contains a comprehensive overview of maritime negligence law and its development, and it analyzes myriad public policy concerns that militate in favor of adopting a more-contemporary approach to cruise ship litigation.

For example, the *Franza* Court explained that it was "particularly skeptical of the view that the patient always holds the critical reins" when he is a passenger on a cruise ship because "[w]ith no land on the horizon, a passenger who falls ill aboard a cruise ship has precious little choice but to submit to onboard care." 772 F.3d at 1242. Similarly, it noted the "hard reality" of a cruise ship passenger seeking medical treatment: "at least in the short term, he may have literally nowhere else to go." *Id.*)

In *Rojas*, United States District judge Joan A. Lenard twice addressed the plaintiff's claim that the cruise ship unreasonably delayed air-ambulance transportation for more than eight hours: first in a motion to dismiss and then in a summary judgment motion. On neither occasion did Judge Lenard hold that a cruise ship operator had no duty to timely and appropriately evacuate a passenger for medical treatment. In the order on the motion to dismiss, Judge Lenard dismissed the claim without prejudice because the allegations were mere labels and conclusions and because they did not describe how the alleged delay caused any injury or caused any existing injuries to worsen. *Rojas I*, 93 F. Supp. 3d at 1310. And in the summary judgment order, Judge Lenard noted that it was "clear that cruise lines must exercise reasonable care when medically treating passengers who are aboard their ships, [but] it is **less clear** whether cruise lines have a duty to secure medical transport for passengers who sustain injuries **ashore**." *Rojas II*, 2015 WL 7736475, at *6 (emphasis added).

The Court agrees that the issue is less than clear, especially post-*Franza*. Many of

the pre-*Franza* cases holding that a ship does not have a duty to secure medical transportation for its passengers relied on *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1367 (5th Cir. 1988).[5] But *Franza* declined to adopt the *Barbetta* rule because of, among other reasons, "the evolution of legal norms, the rise of a complex cruise industry, and the progression of modern technology." *Franza*, 772 F.3d at 1228. In doing so, *Franza* explained that courts no longer confront "nineteenth-century steamships," but, instead, address cases involving "state-of-the-art cruise ships that house thousands of people and operate as floating cities, **complete with well-stocked modern infirmaries** and urgent care centers." *Id.* at 1239.

Moreover, the cases that found no duty often relied on rationales rejected by *Franza*. For example, the *Gliniecki* Court explained that ship owners have no duty to provide medical services because "they are not in the health care industry and lack the expertise required to supervise the provision of medical services." 632 F. Supp. 2d at 1207. But *Franza* rejected that rationale, explaining that it seems "disingenuous for large cruise lines to disclaim any medical expertise when they routinely provide access to extensive medical care in the infirmaries they have constructed for this very purpose." 772 F.3d at 1243.

Recognizing that the law concerning a cruise ship operator's duty to evacuate an

---

[5]    *See, e.g., Gliniecki v. Carnival Corp.*, 632 F. Supp. 2d 1205 (S.D. Fla. 2009) (granting cruise ship operator's motion to dismiss for failure to arrange medical transportation services in a Panamanian port for a passenger).

ill or injured passenger who could not be adequately treated in the ship's infirmary is murky in the post-*Franza* world, the Undersigned focuses on the fundamental policy points outlined in *Franza* to support the ruling that Gharfeh has, under the specific factual scenario alleged here, stated a facially viable claim. Therefore, the Court **denies** Carnival's motion to dismiss Count VI of the amended complaint.

The Undersigned's ruling is **not** one establishing that cruise lines always have a duty to evacuate a sick or injured passenger from the ship, nor does it hold that there is a general duty for cruise ships to evacuate passengers and that a failure to do so breaches that duty. For example, if a passenger were to demand that a cruise ship located in the middle of the Gulf of Mexico and five hours from the nearest hospital-equipped port arrange for his evacuation to an onshore hospital because his bunions were painful, then, in the absence of other facts, no duty to evacuate would arise. On the other hand, if a passenger's appendix burst and she went into septic shock and would likely die in less than 12 hours without intravenous antibiotic treatment that the cruise ship did not possess, then a failure to arrange her medical evaluation to a hospital less than an hour away would be, for purposes of assessing whether a duty existed, assessed quite differently.

In other words, determining whether a passenger has a viable direct liability claim against a cruise ship for failure to evacuate him or her for medical treatment depends on whether the shipowner's "conduct breaches the carrier's more general duty

to exercise reasonable care under the circumstances." *Rojas I*, 93 F. Supp. 3d at 1309 (quoting *Franza*, 772 F.3d at 1246). Thus, when evaluating a cruise ship operator's "treatment of ailing passengers, the exercise of reasonable care is defined as the 'duty to . . . furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.'" *Id.* at 1309–10 (discussing claim of passenger who sustained injuries during a scooter collision in Nassau for ship's failure to secure air ambulance transportation to the United States) (quoting *Franza* 772 F.3d at 1246).

So there is no special, free-floating, independent duty imposed on a cruise ship to provide medical evacuation. Instead, the issue is more properly viewed as a subset of the overall duty to provide **reasonable care under the circumstances.** Under some circumstances (e.g., the bunion scenario), a carrier likely would have no duty to arrange for a medical evaluation. Under other circumstances (e.g., the burst-appendix scenario), a carrier might have a duty.

At this preliminary point, when the Court is simply evaluating pleading sufficiency, the amended complaint adequately alleges a factual scenario that could, if established at trial, lead a factfinder to conclude that Carnival owed such a duty to Gharfeh.

There are a host of factors, not sufficiently developed yet, which would help inform the analysis. To list just some possible factors, answers to the following questions could be relevant in determining whether Carnival had a duty to evacuate

Gharfeh: (1) what medication was aboard, and would it have likely helped to treat his condition?; (2) what diagnostic equipment was aboard to provide a more-nuanced assessment of his medical condition, and why necessary or recommended equipment was not provided?; (3) what medical advice did doctors in the United States provide to Carnival's ship doctor and medical staff about Gharfeh's diagnosis and treatment?; (4) how far away was the nearest hospital and what equipment and staffing did it have?; (5) how far away from the United States or a port with a hospital was the *Inspiration* when Gharfeh's medical condition allegedly worsened to the point where urgent care was critical?; (6) what type of hospital was nearest to the port closest to the ship, and what medical equipment and staffing did it have?; (8) had the Coast Guard been contacted to discuss using its helicopters for emergency evacuation, and, if so, what was its view on its ability and willingness to do so?; (9) how medically risky would a helicopter-type evacuation be, and how would those risks balance against the risks of *not* evacuating Gharfeh?; (10) how confident was the ship's doctor in her diagnosis, and how did her diagnosis compare with the diagnosis of any other doctors who she or other health care providers contacted?; (11) what were the weather and sea conditions, and would they have had any effect on a plan to divert the ship to a port or to arrange for helicopter evacuation?; (12) had Carnival or Gharfeh or his son (also a doctor) contacted a private air-ambulance service, and, if so, could the service timely transport Gharfeh from the *Inspiration*?; and (13) what recommendations do any applicable or

persuasive or reliable maritime authority provide for this situation?

The answers to this non-exhaustive list of questions would create the overall scenario that a factfinder would evaluate when determining if Carnival had a duty to render aid through medical evaluation. If the answer is "yes," then Gharfeh would *also* need to establish that Carnival's breach of this duty proximately caused his illness to worsen. *See Rojas I*, 93 F. Supp. 3d at 1310 (granting motion to dismiss claim for failure to provide air-ambulance transportation, without prejudice, because plaintiff did not allege facts describing how the alleged delay caused any jury or caused any existing injuries to worsen);[6] *cf. Rinker v. Carnival Corp.*, 836 F. Supp. 2d 1309, 1316–17 (S.D. Fla. 2011) (denying Carnival's motion for summary judgment on failure to timely evacuate passenger claim because a genuine factual issue existed concerning whether Carnival's failure to comply with the plaintiff's husband's request for evacuation was reasonable under the circumstances).

### Count VII (Negligent Hiring, Retention, Monitoring, and Training)

In this Count, Gharfeh alleges negligent hiring, retention, monitoring, and training of the onboard medical staff. Carnival challenges the allegations of negligent hiring, selection, and retention on pleading grounds, but he challenges only the claims for negligent monitoring and training on substantive grounds -- i.e., it says these are not

---

[6]     Because Carnival did not move to dismiss the amended complaint on the ground that Gharfeh did not sufficiently allege proximate causation arising from the failure to timely provide medical evacuation, the Undersigned will not examine that topic.

legally viable claims because "there is no obligation for a carrier to monitor or train the onboard physician or medical staff it provides for its passengers." [ECF No. 58, p. 19].

The Court previously denied Carnival's motion in the initial Order, and Carnival asks the Court to reconsider the earlier ruling. I have done so, and I now agree, but only in part, with Carnival's argument about the legal insufficiency of the pleadings. I do not, however, agree with Carnival that, as a matter of law, a cruise passenger can never allege a direct liability claim against a cruise operator for negligent hiring, retention, monitoring, and training of its ship's doctors and medical staff. Therefore, the Court **dismisses** this Count, albeit **without prejudice**. The reasoning underlying the ruling is outlined below.

To state a cause of action for the tort of negligent hiring or retention, a plaintiff must allege that (1) the employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury. *See Doe v. NCL (Bahamas) Ltd.*, No. 1:16-CV-23733-UU, 2016 WL 6330587, at *3 (S.D. Fla. Oct. 27, 2016); *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016).

The principal difference between negligent hiring and retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee or independent contractor's unfitness. *Witover*, 161 F. Supp. 3d at 1148.

To satisfy the second element, a plaintiff **must** allege facts showing that the employer was put on notice of the harmful propensities of the employee or independent contractor before hiring such person. *See, e.g., Flaherty v. Royal Caribbean Cruises, Ltd.,* 172 F. Supp. 3d 1348, 1352 (S.D. Fla. 2016).

In my initial Order, I concluded that Plaintiff's allegations were "somewhat conclusory." [ECF No. 50, p. 22]. Upon further review, however, I conclude that they are actually *too* conclusory to adequately allege a claim for negligent hiring.

The amended complaint alleges that Carnival "knew or should have known to investigate Dr. Carvajal's educational credentials and training . . . including [her] prior employment with other cruise lines and medical providers as well as educational credentials and recent training." [ECF No. 53, p. 44]. It further alleges that "the Defendant [i.e., Carnival] also knew or should have known of [] Dr. Carvajal's unfitness to provide adequate medical care to its shipboard passengers." [ECF No. 53, p. 45].

And it also alleges:

> The shipboard physician and medical staff did not have the mental temperament and analytical abilities and did not have sufficient knowledge and training to properly diagnose or to create a reasonable and appropriate plan for urgent or emergent care and treatment including evacuation of the patient and getting the Plaintiff to a medical center on an expedited basis appropriate for urgent or emergent care.

[ECF No. 53, p. 45]. The amended complaint does not, however, allege that Carnival knew or should have known about these purported deficiencies.

For all practical purposes, Plaintiff has done little more than assert fact-free,

wholly conclusory, boilerplate allegations that Carnival knew or should have known about certain alleged deficiencies in the training and performance of the doctor and her medical staff. Plaintiff has failed to allege "**facts** that are suggestive enough to render each element of his claim for negligent hiring, retention and training plausible."). *Doe*, 2016 WL 6330587, at *3 (quoting *Summers v. Carnival Corp.*, No. 13-23932-CV, 2015 WL 11983231, at *6 (S.D. Fla. Apr. 6, 2015)) (emphasis added); [7] *Witover*, 161 F. Supp. 3d at 1148 (explaining that facts must be alleged to show that employer was on notice of employee's defects); *Flaherty*, 172 F. Supp. 3d at 1351–52 (same).

In *Doe*, the Court dismissed the claim for negligent hiring, supervision, and training (of one of the bartenders, who allegedly sexually assaulted the plaintiff in a crew-only storage room after giving her an unknown number of alcoholic drinks, causing her to become disoriented and intoxicated). Although the Court noted its "doubts that Plaintiff can cure the deficiencies," it permitted her one additional opportunity to amend and state a sufficient claim. *Doe*, 2016 WL 6330587, at *4. Less than two weeks later, Plaintiff filed a notice, withdrawing her count for negligent hiring, retention, training, and supervision. [ECF No. 21, Case No. 16-cv-23733]. The case settled a few months later. [ECF Nos. 40; 42, Case No. 16-cv-23733].

The Court will not predict whether Gharfeh can adequately state a claim for negligent hiring, retention, training, and supervision with specific facts plausible

---

[7] The attorney who represented the plaintiff in *Doe* is also the attorney representing Gharfeh here.

enough to demonstrate the viability of the theory. But I will give him 14 days to file another amended pleading. He will need to allege facts, not merely labels and boilerplate conclusions.

## V.      Conclusion

The Court **grants in part** and **denies in part** Carnival's motion to dismiss, as outlined above. Plaintiff may file a second amended complaint within 14 days of the date of this Order.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on April 6, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record