UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-20499-CIV-GOODMAN
[CONSENT CASE]

SAMIR GHARFEH,

    Plaintiff,

v.

CARNIVAL CORPORATION, et al.,

    Defendants.
_____/

# ORDER ON *IN LIMINE* MOTIONS

This order resolves four motions *in limine* filed on the last day on which these motions could have been filed. Defendant Carnival Cruise Corporation filed three [ECF Nos. 92–94], and Plaintiff Samir Gharfeh filed one [ECF No. 96]. Each side filed a response to the opponent's motions [ECF Nos. 103–06], and each side filed replies in support of the motions [ECF Nos. 116–18; 120].

The rulings are outlined below, on a motion-by-motion basis.

**I. Carnival's Motion *In Limine* to Exclude Testimony By Plaintiff's Expert, Dr. Steinman, Regarding the Coast Guard's Operational Capability to Evacuate Plaintiff**

Carnival seeks to prevent Gharfeh from having an expert medical witness, Dr. Alan Steinman, provide opinion testimony about whether the Coast Guard had the

operational capability to medically evacuate Gharfeh from the ship (the Carnival *Freedom*) during the last leg of the cruise, from Cozumel, Mexico to Galveston, Texas. [*See generally* ECF No. 92]. Carnival's motion does not, however, challenge Steinman's expert opinion testimony about whether, from a **medical** decision-making standpoint, it was possible for the Coast Guard to have evacuated him.

Carnival asserts three grounds for its requested relief: (1) Dr. Steinman is not qualified to render opinions about the Coast Guard's operational capability to evacuate Gharfeh from the *Freedom*; (2) the proposed testimony is unfairly prejudicial and does not pass muster under the balancing test of Federal Rule of Evidence 403; and (3) his opinions would be cumulative because Gharfeh has designated another expert (Commander Richard J. Dein) to provide expert opinion testimony about the Coast Guard's operational ability to evacuate Gharfeh from the ship.

In his response [ECF No. 105], Gharfeh contends that Carnival misconstrues the doctor's opinion. He contends that the doctor's report and testimony do not offer opinions about decision-making and logistics of a Coast Guard flight mission. He argues that, instead, the doctor's opinion concerns the straightforward question of whether the Coast Guard "*could* and *would* have evacuated the Plaintiff had Carnival made the request." [ECF No. 105, p. 1].

He further contends that the testimonies of Dr. Steinman and Commander Dein are not cumulative, though he concedes that there are "elements that overlap." [ECF

2

No. 105, p. 2]. For example, to demonstrate the distinction between the two experts' opinions, he explains that Dr. Steinman's opinions do not concern the "making and logistics of a flight mission insofar as operating helicopters, wind and weather consideration, navigation and other technical aspects of flight missions." [ECF No. 105, p. 2].

Gharfeh also admits that Dr. Steinman's opinions do concern operational capability -- but "from a medical standpoint." [ECF No. 105, p. 3]. He describes the doctor's opinion as merely being that "a USCG flight surgeon would recommend to the operational commander to initiate a flight mission because the USCG had the *medical* operation ability to evacuate the Plaintiff." *Id.* Thus, Gharfeh argues, Dr. Steinman "should be allowed to testify as to what action the medical flight crew could and would have taken during a medical evacuation of a patient." *Id.*

In its reply [ECF No. 116], Carnival observes that Gharfeh concedes the point that Dr. Steinman should not be permitted to offer opinion testimony about "the decision making and logistics of a flight mission insofar as operating helicopters, winds and weather consideration, navigation and other technical aspects of flight missions." [ECF No. 116, p. 1]. But it disagrees that Dr. Steinman offered opinions on these topics and points to a few portions of his deposition testimony where he confirmed that the opinion in his report also concerns the Coast Guard's ability to conduct an evacuation from both a medical standpoint and an operational standpoint.

Carnival argues that the Coast Guard's ability to execute a medical evacuation from an operational standpoint "is a separate determination" from its ability to accomplish that goal from a medical decision-making standpoint. [ECF No. 116, p. 3]. The operational assessment is, Carnival says, "based on an analysis of certain factors, including the operational limitations of the Coast Guard's resources, fuel calculations, distance, weather, maintenance issues and crew availability." *Id.*

In other words, Carnival argues that the opinions do not, and should not "overlap," as Gharfeh contends. [ECF No. 105, p. 2].

In theory, Carnival is correct: Dr. Steinman lacks the expertise to opine on the Coast Guard's operational ability to have evacuated Gharfeh. Such testimony would also be cumulative of Commander Dein's opinion, in any event. In practice, however, it might be difficult to always segregate an opinion concerning the medical perspective from one addressing the operational ability.

So recognizing that there might be a modest amount of crossover, the Court **grants** Carnival's motion. Dr. Steinman may not provide opinion testimony about operational capabilities, such as the flight logistics factors outlined above. But he may, as Carnival acknowledges, provide opinion testimony about "(1) the flight surgeon's evaluation of a passenger's medical condition in order to decide whether the Coast Guard will initiate a flight mission, or (2) the flight surgeon's evaluation of whether it is 'medically possible' to evacuate the passenger." [ECF No. 116, p. 3].

Therefore, to provide an illustration, Dr. Steinman will *not* be permitted to offer trial opinion testimony based on "the capabilities of the HH-65" or whether a helicopter "would have to refuel on a[n] oil rig platform" -- factors he mentioned in his deposition when he explained "where his opinion came from." [ECF No. 116, p. 2].

**II.    Carnival's Motion *In Limine* to Exclude Evidence of Plaintiff's Purported Lost Wages and Future Earnings Capacity**

Gharfeh's Second Amended Complaint seeks damages for, among other things, "past lost wages and compensation and loss of income earning capacity for the future." [ECF No. 62, p. 16]. During discovery, Gharfeh, who holds a Ph.D. in analytical chemistry, disclosed that he is currently retired and that he was last employed in November 2015 -- three months before the cruise at issue.

In his May 19, 2017 Rule 26 disclosure, Gharfeh represented that "[p]ast lost wages and income are incurred on an ongoing basis and as of the date of these disclosures, at this time it has **not been determined** if Plaintiff is making a claim for lost wages." [ECF No. 93-1, p. 7 (emphasis added)]. Similarly, his Initial Disclosures represented that "[a]s of the date of these disclosures, it has **not been determined** whether Plaintiff has a claim for future loss of earning capacity." *Id.* (emphasis added).

Gharfeh never amended or supplemented his Initial Disclosures.

In a later-issued (July 10, 2017) interrogatory answer, however, Gharfeh advised that he had planned to start a consulting firm in February 2016, after the cruise, and he projected annual earnings of $312,000 or more. [ECF No. 93-2, p. 3]. But his

5

interrogatory answers did not explain *how* he calculated the $312,000 projection or the number of years he predicts he would have made those earnings. Gharfeh never created the consulting business, and his January 23, 2018 deposition testimony was that the $312,000 annual revenue projection was based on a likely hourly rate of between $150 and $200 per hour and a 40-hour workweek. [ECF No. 93-4, p. 41].

Gharfeh's expert economist (designated as an expert who would testify about Gharfeh's past and future loss of earnings) revealed in her deposition that she made no projections in her report about Gharfeh's loss of earning capacity and, therefore, did not make any projections about that category of damages. [ECF No. 93-8, p. 4].

Carnival's motion is based on two grounds: (1) Gharfeh's Rule 26 Initial Disclosures did not contain a computation of past lost wages and future loss of earning capacity and (2) the evidence that Gharfeh intends to submit to support these requested damages is speculative and inadmissible. Carnival contends that Gharfeh's failure to comply with Rule 26 is neither substantially justified nor harmless.

In his response [ECF No. 106], Gharfeh contends that he made his calculations and claims known to Carnival through his deposition testimony. In his deposition, Gharfeh testified that his former supervisor at ConocoPhillips said that the company would hire him to continue his work on a consultant basis and that he planned to open a consultancy business to gain *additional* work (in addition to work from ConocoPhillips). Concerning the calculation of lost future earning capacity, Gharfeh's

deposition testimony was that it is "simple math to come up with a number." [ECF No. 93-4, p. 41].

Gharfeh contends that he can offer opinion testimony about the hourly rate of analytical chemistry consultants as a layperson based on his personal experience and knowledge of more than 37 years, including the managing of a lab for ConocoPhillips on a daily basis. He also says that his opinion testimony is neither speculative nor inadmissible – because he "had guarantees that he would continue to work post-retirement." [ECF No. 106, p. 6].

In its reply [ECF No. 117], Carnival argues that Gharfeh has not presented any evidence to permit a jury to calculate lost earning capacity. That calculation requires a comparison of the amount a plaintiff would have earned without the injury and his forecasted earnings in light of the injury. According to Carnival, Gharfeh testified only that he would have earned a particular annual income from a consulting business that he would have created had he not been injured. He failed to provide any information about "how long Plaintiff would have operated his consulting business and, thus, what the total amount of his earnings would have been." [ECF No. 117, p. 2]. In addition, Carnival argues that (1) he also failed to provide a computation of his post-incident earning capacity, (2) failed to comply with his Rule 26 Initial Disclosures requirement, and (3) that the evidence is speculative.

Gharfeh's Initial Disclosures were indeed deficient, and the Court is not

persuaded by his argument that the severity of his physical condition justifies the inadequate disclosure. Carnival, however, later learned, through his deposition testimony, about the purported basis for his damages calculation. Carnival may deem that explanation speculative and inadequate (and it may well be), but it at least has an understanding of Gharfeh's damages theory (which might be legally inadequate).

The Court is concerned that Gharfeh's belatedly-disclosed rationale for his requested lost earning capacity damages is unduly speculative. He did not start the consulting business, and there is no documentary evidence to support his claim that he would have continued to work for ConocoPhillips on a consulting basis. On the other hand, he did provide *some* basis, albeit from a shaky, self-serving perspective, to explain his damages theory.

Although Gharfeh might not be able to sustain a lost earnings capacity award should he prevail at trial, the Court is, for present purposes, **denying without prejudice** Carnival's motion in limine. Carnival may renew its argument at trial. The Court will, if appropriate, evaluate again Carnival's position after hearing how the actual evidence unfolds at trial (including an assessment of any evidence other than his own predictions that Gharfeh may present at trial).

But, as noted above, the Court is hardly convinced that Gharfeh's damages theory is based on sufficient non-speculative evidence. *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008)

(granting defendant's post-trial motion for judgment as a matter of law and taking away $78 million award because expert's opinion was insufficient to support lost profits award for a company that never started its business and because plaintiff failed to produce any evidence that any of the assumptions its expert accountant relied upon was in fact valid); *MasForce Europe, BVBA v. MEC3 Co.*, No. 8:11-CV-1814-T-24AEP, 2013 WL 12156469, at *5–6 (M.D. Fla. Dec. 4, 2013) (citing *Alphamed*, finding inadmissible an expert's opinions about future lost profits and expressing skepticism about plaintiff's business plan and lost profits theory, but deferring ruling until trial to consider evidence of alleged future lost profits); *McMahan Sec. Co. L.P. v. FB Foods, Inc.*, No. 8:04CV1791-T-24TGW, 2007 WL 704916, at *3–4 (M.D. Fla. Mar. 2, 2007) (holding that opinions on lost profits were impermissibly based on projected future earnings in business plan and on speculation and noting that business plan was "a 'best case scenario prediction'").

**III.     Carnival's Motion *In Limine* to Exclude Evidence of Other Complaints, Claims or Incidents Involving its Medical Centers and/or the Specific Treating Doctor**

Carnival's motion [ECF No. 94] concerns, in part, another lawsuit in which another plaintiff alleged that the same doctor -- Dr. Catalina Carvajal -- committed medical malpractice by failing to medically evacuate a passenger seven months after the cruise at issue. The motion also concerns a 24-page log that Carnival produced in discovery that reflects communications from Carnival passengers aboard any cruise ship (not merely the *Freedom*) to Dr. Carvajal or other shipboard medical personnel

within the past three years about issues with professionalism, competency, or quality of onboard medical care.

In support of its motion, Carnival advances three grounds: (1) the complaints and claims are not relevant and are, therefore, inadmissible under Federal Rule of Evidence 402; (2) Federal Rule of Evidence 404(b) prohibits those complaints and claims as improper character evidence; and (3) the evidence is unfairly prejudicial and, thus, excludable under Federal Rule of Evidence 403.

In his response [ECF No. 104], Gharfeh argues that (1) the similarity standard is relaxed when prior incidents are used to show notice; (2) the "substantial similarity" rule applies to out-of-court experiments performed to recreate the critical event or incident (a scenario inapplicable here); (3) prior complaints and claims are admissible to show that Carnival was on notice that Dr. Carvajal and the on-board infirmary and medical staff could not provide medical treatment up to the applicable standard of care; (4) Rule 404(b) allows evidence of "other acts" to prove knowledge; (5) the prior complaints and claims are not unduly prejudicial; and (6) the subsequent lawsuit involving Dr. Carvajal is admissible to show causation.

In its reply [ECF No. 118],[1] Carnival says that evidence of other acts as related to notice of the purported incompetence of Dr. Carvajal and the medical staff does not

---

[1] Carnival's reply, as well as its replies to its other *in limine* motions, provides Westlaw citations to cases but frequently omits the corresponding case number information. The Court prefers the full citation format.

10

relate to a jury issue. Carnival also notes that the only complaint, claim, or incident involving Dr. Carvajal occurred seven months *after* she treated Gharfeh aboard the *Freedom* and contends that post-event evidence cannot be used to establish notice. Carnival also again rejects the notion that post-event evidence is admissible to show causation.

The Court **grants** this motion in limine. Because the only record evidence of other claims involving Dr. Carvajal concern an incident that occurred seven months after her treatment of Gharfeh, the evidence cannot be admissible to establish notice (for the negligent hiring/negligent retention claim). *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-CV-23733-UU, 2016 WL 6330587, at *3–4 (S.D. Fla. Oct. 27, 2016) (outlining elements for negligent hiring, retention, training or supervision claims).

Gharfeh's additional theory -- that evidence of the post-event claim involving Dr. Carvajal is admissible to help establish causation -- is too attenuated to support admissibility. Evidence of that post-event claim is not necessary to prove a particular theory of causation here.

But even if Gharfeh could convince the Court that the post-event claim evidence is admissible to demonstrate causation (which he has not done), the Court would still deem the evidence as inadmissible because it is unfairly prejudicial under Federal Rule of Evidence 403. *See Strait v. Busch Entm't Corp.*, No. 8:05CV1864T24 MAP, 2006 WL 3313747, at *2 (M.D. Fla. Nov. 13, 2006) (finding that incident which occurred two years

after the incident at issue in the lawsuit was not relevant to show causation, and, even if it were, "its probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").

### IV. Plaintiff's Motion *in Limine* to Exclude Collateral Source Evidence and to Permit the Introduction of All Billed Medical Expenses

Gharfeh's motion [ECF No. 96] seeks to accomplish two goals concerning discounts and write-offs to his medical bills: (1) excluding the evidence under the collateral source rule and (2) authorizing the introduction of *all* evidence of **billed** medical expenses. Gharfeh contends that the collateral source rule applies to discounts and write-offs because a contractual discount is, in fact, a collateral source payment to the insured (i.e., the plaintiff) because a payment includes a discharge of a debt.

Gharfeh's motion relies primarily on a 13-year-old, non-binding district court opinion: *Jones v. Carnival Corp.*, No. 04-20407-CIV, 2006 WL 8209625 (S.D. Fla. Jan. 24, 2006). Gharfeh's motion argues that "this District continues to uphold the ruling in *Jones*" and cites a few district court cases that he says support the view "that the collateral source rule is alive and well and therefore must be followed" by excluding evidence of discounts or write-offs. [ECF No. 96, pp. 3–4].

But Carnival's response [ECF No. 103] notes that there is no binding precedent in our Circuit. Carnival readily acknowledges the applicability of the collateral source rule and agrees that it may not seek to admit, or refer to, benefits that Gharfeh received from third parties, such as insurance proceeds. Carnival, however, argues that the collateral

source rule does not permit a plaintiff to introduce medical bills representing the total amount *billed*, as opposed to the amount actually paid. Therefore, Carnival contends, a plaintiff cannot introduce evidence of "written off" or discounted medical charges -- and that doing so would result in an impermissible windfall to Gharfeh, who never actually received such a benefit.

Moreover, Carnival's response cites *myriad* Southern District of Florida cases (most of them within the past three years) that reject the perspective used in *Jones* and which instead find that (1) only the amounts of medical bills that represent the amounts actually paid by a third party for a plaintiff's medical care are a collateral source; and (2) no collateral source benefit is conferred for an amount billed but not paid and, therefore, a plaintiff would obtain an improper windfall if he or she were permitted to recover damages for the billed-but-not-paid amount or to recover for bills that were written off.

Carnival further contends that its view is now "the majority position in this district." [ECF No. 103, p. 7].

In his reply, Gharfeh concedes that other cases disagree with his position, but contends that "they are a far cry from the majority." [ECF No. 120, p. 2]. He also includes a bold-faced subtitle asserting that "Jones v. Carnival is binding." [ECF No. 120, p. 3].

As an initial matter, the Court disagrees with the unequivocal representation that

*Jones* is binding. The mere fact the Judge Adalberto Jordan issued *Jones* when he was a district court judge and is now an appellate judge does not convert *Jones* into a binding Eleventh Circuit opinion. Indeed, *Jones* is not even binding on Judge Jordan himself. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

Moreover, although Gharfeh's motion represents that trial courts in our district continue to follow *Jones*, the reality is that some courts have followed it but that many other courts, including those issuing opinions in the past three to four years, have held to the contrary. Those cases, which now appear to generate the majority view in our district, hold that the collateral source rule in admiralty cases is not implicated by discounts or write-offs and, as a result, plaintiffs would receive windfalls if the rule were to the contrary.

For example, the Court in *Diczok v. Celebrity Cruises*, Inc., No. 16-21011-CIV, 2017 WL 3206327 (S.D. Fla. July 26, 2017) noted that "**[a]n abundance of case law** in this District holds that, under general maritime law, recoverable medical expenses are limited to those actually paid by the plaintiff." *Id.* at *3 (emphasis added); *see also Szczurko v. Celebrity Cruises, Inc.*, No. 15-20592-UU (S.D. Fla. Dec. 30, 2015), ECF No. 41 (granting cruise ship operator's motion in limine to preclude plaintiff from introducing evidence of medical charges "written off" by her providers and "agree[ing] with the

14

**abundant** case law within this District finding that Plaintiff is precluded from admitting evidence of the amount billed by healthcare providers, rather than amount actually paid") (emphasis added).

Gharfeh's position (in his motion) is incorrect. At the risk of stating the obvious, the Court prefers motions and memoranda to (1) cite objectively applicable law, (2) fairly and accurately disclose contrary authority, (3) candidly reveal when a legal argument is the minority view, and (4) not exaggerate applicable law. Gharfeh's motion is inconsistent with my preference. Although Gharfeh's reply ultimately discussed some of the cases which ruled contrary to the position he urges, that discussion occurred only *after* Carnival flagged those cases and Gharfeh was effectively compelled to address them. He should have done that in his initial motion. His initial motion discusses none of the recent cases which held that discounts of medical bills are not collateral source payments and was instead drafted on the representation that *Jones* is alive and well.

Moreover, even some of the cases he cites in his initial motion do not fully support his view. For example, in *Bonnell v. Carnival Corp.*, No. 13-CV-22265, 2015 WL 12712609 (S.D. Fla. Jan. 20, 2015), the district court did agree with *Jones* that, to the extent any discounts of the medical bills were collateral sources, the plaintiffs' damages should not be reduced by those discounts and the defendant cruise ship could not introduce evidence of the discounts. The Court, however, also held that the cruise ship could cross-examine the plaintiffs' medical witnesses about their bills *and insurance*

*discounts* because it could "advance the argument that the medical expenses Plaintiffs seek are not reasonable." *Id*. at *4.

In addition, *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 12085846 (S.D. Fla. Mar. 4, 2015), which Gharfeh also cites to, involved the garden-variety application of the collateral source rule (which Carnival does not dispute in this case) and had nothing to do with discounts or write-offs of medical bills.

Similarly, some of the cases that he cites in his reply are inapplicable. For example, *Wilds v. MK Centennial Mar. B.V.*, No. 8:17-CV-2339-T-33JSS, 2018 WL 539178[2] (M.D. Fla. Jan. 24, 2018),[3] invokes only the traditional collateral source rule and does not, in any way, apply discounts or write-offs. In addition, most of the other cases are from the Middle District, not the Southern District, and many were issued by the same judge (albeit in different cases). Gharfeh's motion, however, claimed that "this district" follows *Jones.* [ECF No. 120, p. 3].

After reviewing the cases in our district in both the minority and majority camps, the Court concludes that what appears to now be the majority rule (at least in this district) is better-reasoned. A discount or write-off does not implicate the collateral source rule in the way the rule was intended to apply. Moreover, prohibiting evidence

---

[2] None of the Westlaw cites mentioned by Gharfeh in this section include the corresponding case number.

[3] Gharfeh's reply incorrectly cites the case as 2018 WL 53917 (omitting the 8, which makes a difference).

16

of the discount or write-off gives the jury a skewed view of the financial reality surrounding the medical bills. The following hypothetical illustrates the point.

Assume that a plaintiff had rotator cuff surgery in Miami because she injured her shoulder after she slipped on a wet deck surrounding a cruise ship pool. Assume further that the average charge by an orthopedic surgeon for the surgery in South Florida is $15,000 but that the surgeon who repaired the plaintiff's rotator cuff charged $200,000. Assume further that the plaintiff's insurance carrier paid the surgeon $13,000, that the surgeon accepted $2,000 directly from the plaintiff, and then wrote off $185,000. Under Gharfeh's view, the hypothetical plaintiff would be permitted to introduce the $200,000 bill and the cruise ship would be prevented from introducing evidence of the $185,000 discount. This result would be illogical and fundamentally unfair, but it would be required by Gharfeh's view of the collateral source rule.

The Undersigned adopts what appears to be the majority view in this district and, therefore, **denies** Gharfeh's motion *in limine*. *See Chimine v. Royal Caribbean Cruises, Ltd.*, No. 16-23775-CV, 2017 WL 8809632, at *2 (S.D. Fla. Nov. 17, 2017) (noting that courts in this district "have repeatedly reached the same conclusion on this issue"); *Brown v. NCL (Bahamas) Ltd.*, No. 15-21732-CIV, 2016 WL 8730145, at *5 (S.D. Fla. Oct. 13, 2016) (limiting evidence of medical damages to the amounts actually paid); *see also Kellner v. NCL*, No. 15-23002-CMA (S.D. Fla. May 20, 2016), ECF No. 59, p. 2 (granting in part a cruise ship operator's motion in limine and ruling that plaintiff "may only

introduce medical bills regarding amounts actually paid" but noting that "Plaintiff's counsel can inform the jury that the doctor accepted only a percentage of the original medical bill").

Here, Gharfeh may not introduce all of his medical bills. Instead, he may introduce only the discounted bills. Introducing all the medical bills without also providing simultaneous evidence of the discounts or write-offs would be unfairly prejudicial and would provide a skewed view of what constitutes reasonable medical expenses. The jury needs to be advised of the discounts or write-offs in order to make a fair assessment of reasonable medical expenses.

Carnival, of course, would not be permitted to introduce evidence of payments made by the carriers (or others). But Carnival does not intend to do that and announced its recognition of the collateral source rule in maritime cases (and how its application in this case would render inadmissible payments on the medical bills).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on January 14, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record